## WADSWORTH, *Admr. vs.* SMITH.

Where one in selling a mill, dam and slip, reserved the right of "*slipping his own logs free of toll,*" it was holden to be a *personal right* merely, and not assignable.

Such little streams as cannot in their natural state be used for the floating of boats, &c. and for the transportation of property, are to be regarded as private property and not as public highways : — and though by the application of artificial means, at the expense of the owner, they become boatable and susceptible of public use, yet they do not thereby become the property of the public.

Whether one can open a way across his land, and then exact *a toll* for the use of a *common passage* through it, without authority from the legislature — *dubitatur*. Though he may, undoubtedly, open a way for his own accommodation, and refuse to permit others to use it without a just compensation.

THIS was an action of *assumpsit* on an account annexed to the writ, which contained several charges for slipping logs on *ten-mile brook*, and for the use of *Clemon's* pond.

The facts in the case appeared at the trial, in the report of *Rufus McIntire, Esq.* who had gathered and stated them by agreement of the parties. That part of the report relating to the points raised and decided, was as follows, viz :

" *Ten-mile brook* is a small stream in *Brownfield,* emptying into *Saco* river. Two or three miles above its mouth, there are mills on a dam across it, where the slip in question is situated. *Clemon's pond* is a few miles further up ; at the lower end of which, a dam was erected by the owners of the mills for the purpose of keeping back the water until it was needed at the mills."

" The mills, dam and slip were erected or possessed by *Samuel* and *Thomas Howard,* as early as 1805 — who conveyed one half to *Joseph Howard,* who conveyed the same to the plaintiff's intestate by deed dated *October* 7, 1816, which deed contained the following reservation, " *and also the right is reserved to said Joseph Howard of slipping his own mill logs through said dam free of toll.*" At the time of the last conveyance the other half was in possession of the plaintiff's intestate, and in 1818 he rebuilt the mills, dam and slip, and continued to occupy them till his death."

" Logs were driven from the mill pond through the slip, in 1805, and toll claimed and paid therefor, and the same has been done from that time to the death of the intestate."

" In 1811 the brook was cleared out above the mill pond to *Clemon's pond,* for the purpose of floating down logs, by a person not a party to this suit, at an expense of $200. The slip cost about $50, and is made through the dam at the mills."

" The defendant drove all the logs in that brook for certain years, by contract with the owners, and it was agreed that he was chargeable with all tolls and for accommodations, as a facility to him in executing his contract, if any such were chargeable upon the *logs driven.*"

Some of the logs were owned by *Pease & Pike,* and had been cut from land lying contiguous to the upper waters of the *Ten-mile brook,* which they had purchased of *Joseph Howard,* in *October,* 1825, whose deed contained the following. clause, viz : " *and also all my right to slip logs at Peleg Wadsworth's mills on Ten-mile brook, as reserved in my deed to him dated October* 7, 1816."

" There was no proof that the use of the waters of *Clemon's pond* was any damage or inconvenience to the plaintiff's intestate — but it appeared that the flowing the pond by his dam, afforded a facility in ordinary years when there was no abundance of water, to log owners or drivers, and that, merely incidental to its erection."

It appeared that there had been a settlement of accounts between the plaintiff's intestate and the defendant, in *December,* 1828, in which the latter allowed and paid a charge for slipping logs — but not those which were cut upon the lands sold by *Howard* to *Pease & Pike.*

*Fessenden,* for the plaintiff, cited *Berry* v. *Carle,* 3 *Greenl.* 269; *Angel on Water Courses,* 2, 14, 81, 138; *Sheppard's Touchstone,* 77; 4 *Cruise's Dig.* 327; *Choate* v. *Burnham,* 7 *Pick.* 274.

*N. Emery,* for the defendant, contended, 1. That this brook was a public highway, over which the defendant had as much right to pass with his logs as the plaintiff's intestate, or any other citizen had.

2. The plaintiff's intestate had no *right* to take toll without a grant from the legislature. *The proprietors of Canal bridge* v. *Gordan,* 1 *Pick.* 295; *Com. Dig. Toll E & F*; *Commonwealth* v. *Heare,* 2 *Mass.* 102; *Robbins* v. *Borman & al.* 1 *Pick.* 122; 7 *Johns.* 179; *Griffin* v. *Howe,* 18 *Johns.* 397.

3. But if he had, he could not charge for the slipping of logs cut upon the *Howard* land. The reservation of *Howard,* in his deed, did not constitute a mere *personal* right — but was intended to apply to the trees standing, and passed by his deed to *Pease & Pike.*

PARRIS J. at the ensuing *May* term in this County, delivered the opinion of the Court.

We are of opinion that the reservation in *Howard's* deed to *Wadsworth,* the intestate, gave the former an unrestricted right to slip his own mill logs through the dam free of toll, but that it was a personal right, to be exercised by *Howard* only, and not assignable. It could have no operation in favor of any person, other than *Howard,* or in favor of any logs other than such as belonged to him. The logs slipped by the defendant, not being *Howard's* logs, were not included in the reservation, and the plaintiff has the same right to claim toll on these logs as on those hauled by *Lowell,* or on logs cut on land which had never been the property of *Howard.* The reservation had no reference to the place where the logs were cut, but to the person who owned them at the time they were slipped.

But whether the owner of the dam and slip had a right to exact a toll on any logs passing down *Ten-mile, brook* is a question of more difficulty. Toll thorough, being against common right, is not to be exacted from the citizens, but upon good consideration, and under license or authority from the sovereign power. No authority is shown in this case, and it becomes material to ascertain what rights the plaintiff had in and over this stream.

The general principle of the common law, applicable to this subject, is that above the flow of the tide, rivers become private, either absolutely so, or subject to the public right of way, according as they are small or large streams. Those which are sufficiently large to bear boats or barges, or to be of public use in the

transportation of property, are highways by water, over which the public have a common right; and the private property of the owner of the soil is to be improved in subserviency to the enjoyment of this public right.

Such rivers, therefore, cannot lawfully be so obstructed, even by the owner of the banks and bed, as to interfere with this public right; — and no toll can be exacted of the citizens for the use of such water as a public highway.

If, therefore, *Ten-mile brook* was naturally of sufficient size to float boats or mill logs, the public have a right to its free use, for that purpose, unincumbered with dams, sluices or tolls; — and no man can lawfully thus encumber it, without the public permission. But such little streams or rivers as are not *floatable*, that is, cannot, in their natural state, be used for the carriage of boats, rafts, or other property, are wholly and absolutely private; not subject to the servitude of the public interest, nor to be regarded as public highways, by water, because they are not susceptible of use, as a common passage for the public. If the *Ten-mile brook* be naturally a stream of this description, then, although *Wadsworth* and his grantor have at their own expense made it *floatable* by artificial means, it did not thereby become public. *Smith* had no common law right to improve it. It was private property; — and when private interests are involved they shall not be infringed without a satisfaction being made to the parties injured; — and it does infringe private interests to suffer the public, without compensation, to pass over private property, not being a common highway, inasmuch as it affects the inheritance of the owner.

There is no *direct* proof in the case, showing the size or character of this stream or brook, and in the absence of such proof upon this point, we must resort to inference and presumption from those facts which are proved.

If a man be owner of the land on both sides of a stream or river, in *common presumption,* he is the owner of the whole river. Whoever claims an easement or right of way over another's land must shew his right. The burden of proof rests upon him who claims the easement.

*Smith* does not claim to be the owner of the soil on either side of this brook. The mill and stream had been in the exclusive

possession of the plaintiff's intestate for many years. The mill, dam and slip were rebuilt by him in 1818, and the slip had for more than twenty years been used as a passage way for logs, during all which time a toll had been claimed and paid. Moreover, *Smith* himself had recognized *Wadsworth's* right to the exclusive control of this brook, by paying him a compensation for the passage of other logs through the slip. From all these facts, it is to be inferred that *Ten-mile brook* was not naturally a water highway, and that the public had no right to its enjoyment as such.

If it were otherwise, the burden of proof being on the defendant, it was for him to show it.

We are then to consider this stream as private, and to be used for such purposes, and in such manner, as the owner of the bed and banks over and through which it runs, should see fit to apply it, subject to the individual and private rights of the owners above and below him.

But there is another question in this case, to which our attention was not called in the argument, but which is, by no means, free from doubt. Can a toll, in any case, be exacted, without a license or grant from public authority? Must not the claim be founded either upon grant or prescription? Although toll traverse is not against common right, and, therefore, the party claiming it will not be required to prove a consideration, as that is implied; still, can he open a way or common passage over his lands or through his waters, for the public accommodation, and, as toll, demand of right a sum certain of each individual who enjoys the accommodation?

*Sir Matthew Hale,* in his treatise *de jure maris, chap.* 3, says, " No man can take a settled or constant toll, *even in his own private land,* for a common passage, without the king's license." All the books, which we have been able to consult, consider toll as a common charge, which it is the prerogative of the government alone to impose and regulate.

But a proprietor may open a passage through his land for his own accommodation, and he may permit others to pass it under an agreement for compensation, which agreement being founded on a valid consideration, to wit, the injury done to his freehold,

may be enforced at law.   He may improve his water-course by dams, locks, or otherwise, and withhold their use from all who will not make him a reasonable compensation.   He may yield the enjoyment to one and refuse it to another.   If he receive compensation for such enjoyment, the law will permit him to retain it; — if he accept a promise as an equivalent, the law will enforce it; and a promise may as well be implied in such a case as any other.

But as toll, as a settled, certain and defined sum exacted for the use of a *common passage*, we doubt whether it can be recovered.   It must resolve itself into an agreement of the parties, and will then be treated like all other contracts founded on a sufficient consideration.

In the case under examination, the charge in the plaintiff's account is for slipping 2561 M. feet of timber, at four cents per M. It is not charged as toll *eo nomine*, and whether that is the rate which the plaintiff charged others for the like accommodation does not appear.

The defendant has received the benefit of the plaintiff's services, and in the absence of proof of an express promise, the law implies a promise to pay *reasonably* therefor; and that amount, whatever it may be, we think the plaintiff is legally entitled to receive.

But the charge for the use of *Clemon's pond* is wholly inadmissible from the facts reported.   That was naturally of sufficient size to bear boats and rafts, and the dam at the outlet was erected by the owners of the mills merely to keep back the water, until it was needed at the mills.

No damage or inconvenience was sustained by reason of the use of the waters to float the logs; — and it does not even appear that the plaintiff's intestate was the owner of the pond.   To support this charge, the plaintiff must show that his intestate had the exclusive right to the pond and its privileges.   This he has not done, and, consequently, cannot recover for their use.