## Case No. 10,688.

### PALMER v. CUYAHOGA COUNTY.

### [3 McLean, 226.] [2]

Circuit Court, D. Ohio. July, 1843.

RIVERS—OBSTRUCTION TO NAVIGATION—CONSTITUTIONAL LAW—RIGHT OF CONGRESS TO REGULATE COMMERCE BETWEEN STATES.

1. The provision in the ordinance of 1787, that certain navigable waters "shall be common high-

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reported by Hon. John McLean, Circuit Justice.]

ways and forever free," &c., does not prevent the improvement of the navigation of said waters by a state. The ordinance referred to these waters in their natural state.

[Cited in Jolly v. Terre Haute Draw-Bridge Co., Case No. 7,441; Escanaba & L. M. Transp. Co. v. City of Chicago, 107 U. S. 690, 2 Sup. Ct. 195; Wallamet Iron Bridge Co. v. Hatch, 19 Fed. 354; Holyoke Water-Power Co. v. Connecticut River Co., 20 Fed. 79; Huse v. Glover, 119 U. S. 547, 7 Sup. Ct. 315; Rhea v. Newport N. & M. V. R. Co., 50 Fed. 20.]

[Cited in City of Chicago v. McGinn, 51 Ill. 273. Cited in brief in People v. U. S., 93 Ill. 32. Cited in Carondelet Canal & Nav. Co. v. Parker, 29 La. Ann. 430; Attorney General v. Manistee River Imp. Co., 42 Mich. 634, 4 N. W. 486. Cited in brief in Dugan v. Bridge Co., 27 Pa. St. 308. Cited in Wisconsin River Imp. Co. v. Manson, 43 Wis. 264.]

2. If they shall be improved by slackwater navigation or otherwise, a reasonable toll for the increased facility, would not violate the ordinance.

3. No state can obstruct a navigable stream which extends to other states, or is connected with a river or lake which falls into the sea.

[Cited in U. S. v. Bain, Case No. 14,496; Holyoke Water-Power Co. v. Connecticut River Co., 20 Fed. 79.]

[Cited in Holyoke Water-Power Co. v. Connecticut River Co., 52 Conn. 575.]

4. The power to regulate commerce among the several states is paramount, in the federal government, and cannot be restricted by a state.

[Cited in Jolly v. Terre Haute Draw-Bridge Co., Case No. 7,441.]

5. It might be difficult to state, in this respect, the difference between the general power of a state not subject to the ordinance, and one that is subject to it.

[Cited in McLean v. Hamilton County, Case No. 8,881.]

[Cited in People v. U. S., 93 Ill. 32.]

6. The Connecticut Reserve, ceded to the United States after the adoption of the ordinance, is subject to that instrument equally, as other parts of the territory northwest of the Ohio.

In equity.

Mr. Foote, for defendants.

OPINION OF THE COURT. This is an application for an injunction to prevent the construction of a draw-bridge over the Cuyahoga river, by the defendants, on the ground that it will obstruct the navigation of the river, and will be injurious to the real property of the complainant in the vicinity of the bridge. This application is made under the fourth article of the compact in the ordinance of 1787, which declares, "that the navigable waters leading into the Mississippi and St. Lawrence, and the carrying places between the same, shall be common highways and forever free, as well to the inhabitants of said territory as to the citizens of the United States, and those of any other states, that may be admitted into the confederacy, without any tax, impost or duty therefor."

As this provision of the ordinance was somewhat elaborately considered, in the case of Spooner v. McConnell [Case No. 13,245],

it will not be necessary now to discuss the subject at large. The ordinance had reference to "navigable waters" in their natural state. No tax, impost or duty shall be imposed for their use; and as they are to remain "common highways," there can be no obstruction to their use. Now this provision does not prevent a state from improving the navigableness of these waters, by removing obstructions, or by dams and locks so increasing the depth of the water as to extend the line of navigation. Nor does the ordinance prohibit the construction of any work on the river, which the state may consider important to commercial intercourse. A dam may be thrown over the river, provided a lock is so constructed as to permit boats to pass, with little or no delay, and without charge. A temporary delay, such as passing a lock, could not be considered as an obstruction prohibited by the ordinance.

A state, by virtue of its sovereignty may exercise certain rights over its navigable waters, subject, however, to the paramount power in congress to regulate commerce among the several states. These powers are not concurrent, but are separate, and independent of each other. And in regard to the exercise of this power by a state, there is no other limit than the boundaries of the federal power. It would be difficult to maintain the power in any state to obstruct any of its navigable waters which extend through other states, or are connected with the sea, or with waters falling into the sea. And it might be more curious than useful to inquire in what the powers of the states generally differ, in this respect, from the powers of the states bound by the ordinance.

A toll charged for the improvement of the navigation of a river, is not within the ordinance. In such a case the tax would not be, for the use of the river in its natural state, but for the increased commercial facilities. A drawbridge across a navigable water is not an obstruction. As this would not be a work connected with the navigation of the river, no toll, it is supposed, could be charged for the passage of boats. But the obstruction would be only momentary, to raise the draw; and as such a work may be very important in a general intercourse of the community, no doubt is entertained as to the power of the state to make the bridge. It is one of those general powers possessed by a state for the public convenience, and may be exercised, provided it does not infringe on the federal powers, or violate the limitations in the ordinance.

In the argument, the defendants' counsel insist that the Cuyahoga river being within "that territory called the Western Reserve of Connecticut, and which was excepted by the state of Connecticut, out of the cession made by it to the United States, in 1786, is not subject to the ordinance. That neither the right of soil or jurisdiction in the reserve was ever vested in the United States, until the deed of cession by Connecticut to the United States, which was long after the date of the ordinance." That this reserve was, to some extent, subject to the legislation of Connecticut, for several years after the date of the ordinance, is admitted. But, when this territory and the jurisdiction over it were ceded to the United States, it became subject to the ordinance, the same as every other part of the northwestern territory. Rights acquired under the former laws are governed by those laws. But on its cession to the Union, all the laws of the territory, and especially its fundamental law, became the law of the reserve. By consenting to come under the jurisdiction of the federal government, they became parties to the articles of compact contained in the ordinance.

The injunction is refused.