## Bidwell Chapman and George P. Chapman v. Keystone Lumber and Salt Manufacturing Company.

*Assumpsit upon a statutory liability: Act No. 221 of 1863 for floating logs.* The remedy of a party, who, under the act of 1863 (No. 221, p. 374) clears a river of obstructions occasioned by jams of logs, is not confined to the enforcement of the lien given by that act; but an action of *assumpsit* may be maintained upon the provisions of the act, which declare that the logs may be run at the cost and expense of the owner of them, and that such owner shall be liable for such cost and expense.

*Heard May 3.    Decided May 10.*

Error to Bay Circuit.

Bidwell Chapman and George P. Chapman brought an action of *assumpsit* in the Circuit Court for the County of Bay, against the "Keystone Lumber and Salt Manufacturing Company," declaring specially: "For that whereas the said defendant, to wit: on the first day of April, 1868, caused to be put a large quantity of logs, to wit, ten

thousand logs into the Rifle River, the same being a navigable river in said county, for the purpose of floating the same to the place of manufacture; and whereas the said defendant did not make adequate provisions nor put on sufficient force for breaking jams of such logs and for running and driving the same in said river; and whereas said logs so put in formed jams in said river and the navigation of said river was thereby obstructed, and whereas the said plaintiffs had a large quantity of logs in said river in the rear of said defendant's said logs, and whereas the said plaintiffs in order to float and run their said logs had to and did cause said jams so formed to be broken, and did run and drive said defendant's said logs a long distance, to wit, twenty miles, which said breaking of jams, running and driving said logs was well worth the sum of seven hundred dollars, and for which said sum said plaintiffs claim a lien upon said logs of said defendant under and by virtue of Act No. 221 Session Laws of 1863, whereby the said defendants became liable to the said plaintiffs under and by virtue of the provisions of an act of the Legislature of said State, entitled an act to provide for the floating of logs and timber in the streams of this state, "Approved March 16, 1861," and the amendments thereto, which said sums the said defendant, in consideration of the premises, afterwards faithfully promised and undertook to pay. Yet the said defendant, not regarding its said promise and undertaking, wholly neglected and refused and still doth neglect and refuse to pay said plaintiffs said sum of money or any part thereof to said plaintiff's damage one thousand dollars."

The declaration contained a second special count, and the common counts in *assumpsit*. The defendant pleaded the general issue and gave notice of a set off.

On the trial " the Court charged and directed the jury to bring in a verdict for the defendant, for the reason that the plaintiffs did not take and retain such possession of the

property as would be sufficient to preserve their lien, and were not therefore entitled to maintain an action of *assumpsit;* that when the plaintiffs suffered the logs to go into the boom, and did not obtain the promise of the boom company to take charge of them for said plaintiffs, and in answer to their request, were notified by the boom company that they would not take charge of the logs for the plaintiffs, they thereby lost their possession of the same." To which charge the plaintiffs excepted. Under these instructions the jury found a verdict in favor of the defendant; and the judgment entered thereon is brought into this Court by writ of error.

*Marston & Hatch,* for plaintiffs in error.

The remedy given by the act of 1861 (*pp. 557–8*) was clearly one against the property; the constable could, by virtue of his execution, only levy on the particular logs run, and the person claiming the lien was required to hold possession of them. The owner was not personally liable. The Legislature not considering the remedy here given sufficient, in 1863, (*Laws 1863, p. 374*), amended the act of 1861 by substantially re-enacting the first section, *making, however, the owner of the logs so run personally liable for the cost and expense of running the same.*

The act in question is remedial: passed, not only to give a remedy, but to supply defects in the act of 1861. It being remedial, then, everything is to be done in advancement of the remedy that can be given consistently, with any construction that can be put on it.—*Sedgwick on Stat., and Const. Law. 360.*

The person running or driving logs had a complete and perfect remedy against the property under the act of 1861. If the act of 1861 gave a complete remedy against the property, and the act of 1863 does not give an additional or different remedy, then, for what purpose did the Legis-

ture attempt to amend the act of 1861 ? No rule is better settled than in construing a statute, effect must be given to every part of it; one part must not be so construed as to render another part nugatory, or of no effect.—*People v. Burns, 5 Mich., 115.*

The question is for the first time presented to this Court, and must be disposed of upon principle. The statute imposes upon the defendant a moral obligation to pay the claim by declaring it to be *personally liable,* and in the language of Lord Abinger, " the action may be sustained on the ground of morality and justice. The maxim of the English law is, to amplify its remedies, and, without usurping jurisdiction, to apply its rules to the advancement of substantial justice." Accordingly, the principle upon which courts of law act is to administer justice to a party who can make that justice appear *by enlarging the legal remedy, if necessary, in order to attain the justice of the case.*— *Broom's Legal Maxims, 77.*

The action of *assumpsit* is an equitable remedy, and is most favorable to the defendant. To compel plaintiffs to retain their lien, would require additional services on the part of the plaintiffs, increase the cost and expenses to defendant, and prevent the defendant from taking possession of, and manufacturing the logs; it would be very inconvenient, and an argument drawn from inconvenience is forcible in law. Such a construction should not be put upon the statute, unless it is capable of receiving no other.

*Green & Scofield,* for defendant in error.

On the trial in the Circuit Court no claim or offer of proof was made, except under the first count of the declaration, and the statement made, and which was taken as the evidence in the case for the purposes of the trial, did not assume any express promise of payment by the defendant.

1. If the plaintiffs were entitled to a lien upon the logs,

they lost it by their failure to retain possession of them. *3 Pars. on Cont.*, *243*, *4;* *Jordon v. James*, *5 Hammond*, *88*, *98;* *3 East*, *235;* *Nevan v. Roup*, *8 Clarke* (*Iowa*), *207;* *Crouston v. Phil. Ins. Co.*, *5 Binney*, *538;* *Holley v. Huggeford*, *8 Pick.*, *73;* *Bailey v. Quinte*, *22 Vt.*, *474.*

2. The statute creates a liability of the owner for the *cost and expense* of breaking of jams, ·&c., and provides a remedy, and to that remedy the plaintiffs are confined.—*Renwick v. Morris*, *7 Hill*, *575;* *Stafford v. Ingersoll*, *3 Hill*, *38;* *Almy v. Harris*, *5 Johns.*, *175;* *Edwards v. Davis*, *16 Johns.*, *281.*

The plaintiffs may have a remedy at common law, if the stream was unlawfully obstructed, by an action on the case, but not in *assumpsit.* The creation of a liability by the first section, if there was no provision for enforcing it, would not give the remedy by *assumpsit*, but only in case. The action of *assumpsit* is given by the third section, for establishing and enforcing the lien provided for, and when the lien does not exist the party can have no remedy under this statute. The obligation created by the statute can only be enforced in the way provided by the statute, that is to say, by securing the lien upon the logs and retaining it by holding the possession and prosecuting an action of *assumpsit* to establish and enforce it.

CHRISTIANCY, J.

The only question in this case is whether, under the act of March 20, 1863, (*Sess. Laws, p. 374*), a plaintiff, who, in floating his logs in a navigable stream, has, for the purpose of clearing the stream from obstructions by jams of defendant's logs, caused such jams to be broken and the defendant's logs to be run under the circumstances authorized by the first section of that act, can, without reference to the lien given by that section, sustain an action of *assumpsit* against such owner personally for the cost and expense

of breaking such jams and running the logs; or, whether the remedy given by the act is intended to be confined exclusively to the enforcement of the lien provided by that act in the nature of a proceeding *in rem*.

The first section provides that such logs may, under the circumstances there specified, be run, the jams broken, and the banks cleared, "at the cost and expense of the person owning such logs, etc., and such owner shall be liable to such person for such cost and expense."

If the act had stopped here, an action of *assumpsit* in our opinion, might be sustained against the owner personally, for such costs and expenses, just as clearly and upon substantially the same principles, as if the plaintiff had done the same work and incurred the same expense "at the special instance and request" of the defendant. Had the work been done and the expenses incurred at the request of the defendant, it would only have created the liability to pay. That liability would, upon the principles of pleading in the action of *assumpsit*, have been alleged as the foundation of the promise to pay. The statute creates the same liability for the same labor and expense under the specified circumstances. This liability, in both cases alike, creates the legal duty of the defendant to pay. And this duty the law enforces in an action of *assumpsit*, under the name or theory of a promise to pay; adopting the conclusive presumption that every man promises to pay what it is his legal duty to pay.

Without any aid therefore from any subsequent provision of this statute, the remedy of the plaintiff by a personal action of *assumpsit* was complete and perfect, unless there is something in the subsequent provisions to modify or limit the effect of that already cited; and we have been able to discover nothing in any part of the act which in any way affects or modifies this provision.

The act, after the provision cited, making the owner liable for such costs and expenses, proceeds, "and such per-

son, &c., so causing such jams to be broken, or such logs, &c., to be run, &c., may have a lien upon such logs, &c., for his or their reasonable charges and expenses, &c., and shall be entitled to retain possession of such logs, &c." Section two provides how this lien may be discharged by the owner giving bond.

Section three provides for enforcing this lien by an action of *assumpsit* against the owner, "to determine and satisfy the amount of the lien, and that the property so held may be levied upon and sold, to satisfy any judgment," in such action, with the cost and expenses of providing for the care and safety of such property.

Section four makes special provision for enforcing the lien by a proceeding against the property, when the owner is unknown or out of the jurisdiction, by petition, publishing notice, &c., in which the owner may appear and defend, but if he do not, the petitioners may proceed to trial *ex parte*. But in this proceeding, as well as in the action where the owner is served, the judgment can only be satisfied "out of the property covered by the lien." All of the provisions in the act following that which makes the owner personally liable, are confined to the enforcement of a lien, by action, against the property covered by the lien.

It is plain that cases may frequently occur under this act when the property upon which the plaintiff has been able to secure and retain a lien, may be quite insufficient to pay such costs and expense. And from the nature of the peculiar risks to which such property and its possession may be exposed, it may not unfrequently happen, that the lien may be lost without the fault of the plaintiff; and if his remedy be confined to the sale of the property upon which he has been able to secure and retain a lien, he must fail to obtain satisfaction, as no special means are provided by the act for enforcing the personal liability of the defendant.

Such a construction completely nullifies the provision

which renders the defendant liable to such costs and expense, and upon this construction that provision might as well have been omitted. The property alone would be liable, and not the owner.

We are satisfied, such was not the intention of the act, but that the provision making the owner liable, was intended to be complete in itself, and enforcible by action independent of the provisions for enforcing a lien; that the provisions for enforcing a lien were intended to give a further and optional remedy.

We do not think it necessary here to analyze the act of March 16, 1861, of which this is an amendment; but a careful examination of that act has confirmed us in the interpretation we have given to this.

The judgment of the Circuit Court must therefore be reversed with costs, and a new trial awarded.

GRAVES, J. concurred.

CAMPBELL, CH. J.

I think the Circuit Court decided correctly, in holding that no action of *assumpsit* can be maintained under the statute for regulating the running of logs, by any one who has relinquished his lien upon the property which he has once taken into his possession for the purpose of breaking jams and running it.

So far as any mere personal remedy is concerned, it cannot be claimed that an action of *assumpsit* is any more appropriate or desirable than an action on the case, for the obstruction and nuisance caused by log jams, which result from want of sufficient force to break them. There was no need of legislation for any such purpose, and such is not the fair inference from legislative action. The real grievance was that the owners were not always accessible or responsible, and provision was needed whereby the property itself, which caused the mischief, could be held to secure

indemnity. There was already a sufficient personal responsibility, if it was desired to pursue the person.

The statute of 1863, under which this action is expressly brought, after declaring that the offending logs may be run at the cost and expense of the owners, and that the owners shall be liable for such cost and expense, proceeds in the same sentence to declare that the person running them shall have a lien, and shall be entitled to retain possession to satisfy his charges, expenses and costs, " *until the same shall be determined, satisfied and paid in the manner hereinafter prescribed.*"

After providing that the property may be bonded, the law proceeds to provide how redress shall be had upon the statutory right. It declares that any person, &c., " *claiming any lien as aforesaid,*" may bring an action of *assumpsit* to determine and satisfy *the amount of such lien.* This action is to be brought in the county *where the property is situated,* instead of where one of the parties resides, as in all other cases of *assumpsit.* And the judgment is to be satisfied by issuing execution against the property. In cases where the owner is not found, proceedings are had by petition and publication, and the property is sold by order, without execution.

These remedies cover all cases where the owner is found or not found, and provide amply for such redress as can be desired against the property. As already suggested, the action on the case gave a sufficient recourse against the person, when the property was not pursued, and was at least as good a remedy as *assumpsit.*

There is not the least necessity for straining the statute, in order to secure a personal remedy, and it is certainly an elementary principle that where a statute creates a right and accompanies it with a specific remedy, it excludes other remedies. There never was any common law right resembling those provided for by this statute, and it was not claimed that any such existed. It is very plain that the

liability of the owners to pay these costs and charges is purely statutory. We have no more right to give the action of *assumpsit* where the statute has not given it, than to create the liability which it is sought to enforce by it.

Even if the statute had continued as first enacted in 1861, when it was as distinctly provided as now, that the logs should be run at the "*charge and expense of the owners*," and when the action of debt provided for was nugatory in many respects, it would have been a strained construction to assume that *assumpsit* would lie. No doubt the Legislature may allow any form of action to be used, whether conformable to common law usage or not, but the common law action cannot lie except where the common law incidents exist. There is no principle which will fit the common law action of *assumpsit* to a statutory liability raised *in invitum*, and some other remedy would have been necessary if the statute had not provided any.—*Comyn's Digest*, "*Action upon Statute.*"— The Legislature has no general power to authorize one person to perform services upon the property of another, or to assume charge of it for his benefit. Such legislation would be clearly invalid. This statute does not attempt to authorize any such unlawful meddling. It is not aimed at all at providing for the management of logs for the especial benefit of their owners. It is designed entirely for the advantage of those who are obstructed by their neighbors. No one can interfere with the logs of others until it becomes necessary for his own safety to do so, and no one can continue to keep up such interference beyond what is necessary to prevent obstructions, and to preserve his lien for expenses necessary to that end. It is merely a right to abate a nuisance, and to retain a lien for reimbursement. The log-owner gets no benefit from it beyond what accrues from the logs themselves, and for this the logs are ample security. If they are not, there is at all events no other lien created on any thing else, and when logs will not pay the expense of running, it

is not likely that any one will expend a great deal of money in clearing away such hindrances.

The proceeding is analogous to that for impounding beasts, where the injured party has his option to bring his action for the injury which he sustains, or to distrain. The law provides for ascertaining the amount of damages and expenses; it speaks of it as the amount for which the owner is " liable " ( *C. L.* § *5056* ) and as " the sum *due* from the owner or keeper of the beasts." ( *C. L.* § *5057* ). It provides " if the sum *so found to be due* shall not forthwith be paid," the property may be sold. § *5058*. The words importing debt and liability are fully as strong as any in the statute before us, but it has never been supposed that in addition to the statutory remedy, the party could be regarded as entitled, inferentially, by virtue of these clauses, to an action of *assumpsit*, in lieu of the action of trespass or case, if he should sue directly for the injury, instead of distraining, or should waive a sale.

There is no hardship and no injustice in compelling a plaintiff to elect between his statutory and common law remedies. In the case before us the declaration is framed on the statute, and *avers* that the plaintiff *claims his lien*. This is a condition of suit. He had in fact, as he concedes, waived his lien. He thereby debarred himself from claiming under the statute, and the Court below in so holding, was sustained by legal principles.

COOLEY, J.

I concur in the opinion of my brother Christiancy. I am unable to discover any other purpose in some of the provisions of the act of 1863, but to give to a party, where he has been compelled, in order to run his own logs, to run those also belonging to other parties, who have made no provision for that purpose, a personal action for the recovery of the proper compensation. It is true he might

have had an action at the common law to recover damages for the injury caused by the destruction of his rights; but an action on the case for this purpose was a very inadequate, as well as very uncertain remedy. The damages recoverable were not liquidated or definite, and no such remedy aided the party at all in running his logs. The power to send the logs forward was the most valuable part of the remedy given; but the right to maintain an ᵥ action for damages which are certain or capable of being rendered so, is a much more valuable one than a right of suit, where the damages are uncertain and almost wholly at large. I have no doubt the purpose here was to give the more valuable and simple remedy.