69   207
114    72

THE EAST BRANCH STURGEON RIVER IMPROVEMENT COM-
PANY v. THE WHITE & FRIANT LUMBER COM-
PANY AND BETHEL BRISTOL.

*River navigation companies—Construction of statute.*

1. Chapter 111 of How. Stat. does not authorize the formation of
corporations to improve *non-navigable* streams, nor was it
intended to *create* navigable rivers out of creeks or streams which
could not, in their *natural* condition, be considered navigable in
any sense of the term.   *Clay v. Pennoyer Creek Improvement
Co.*, 34 Mich. 204.

2. A corporation organized under chapter 111 of How. Stat. has
no right to subject the lands of other riparian owners to any
easement or right of overflow, nor to take lands for the purpose
of locating dams or other improvements on a *non-navigable*
stream, without the permission of such owners.

3. It was not intended by chapter 111, How. Stat., to legalize
improvements already made without any license or authority
whatever, by the incorporation of a company under said statute;
and an application to the board of control setting forth *work
already done* as *"proposed* improvement" is a fraud upon said
board.

Appeal from Menominee.   (Grant, J.)   Argued January
11, 1888.   Decided April 6, 1888.

Bill filed to enjoin interference with complainant's use of
a dam, etc.   Defendants appeal.   Decree below reversed and
bill dismissed.   The facts are stated in the opinion.

*Ball & Hanscom,* for complainant.

*J. C. FitzGerald,* for defendant White & Friant Lumber
Company.

*Charles Chandler,* for defendant Bristol.

MORSE, J.   The complainant is a corporation chartered

under the law for river navigation companies, and was organized May 14, 1884, for the purpose of improving the navigation of the East branch of Sturgeon river, then located in the counties of Marquette and Menominee in this State.

The defendant company is a corporation existing under the laws of the state of Illinois, and was organized June 3, 1885. The defendant Bristol is an employé of the company.

. The facts, as we find them, are substantially as follows:

In the fall of 1883, and in the winter of 1883 and 1884, the A. M. Harmon Lumber Company were the owners of a large quantity of pine land, situated on and near the East branch of the Sturgeon river, in townships 42, 43, and 44 north, of range 29 west, and began cutting pine logs thereon, to be driven down this stream. The persons composing this lumber company, which was a partnership, were A. M. Harmon, Warrick Price, and James Farmer, of Cleveland, Ohio, and Alonzo L. Foster, of Marquette county, Michigan.

The stream was not capable of floating logs without a clearing out and improvement of the channel,—being narrow, crooked, and full of rocks and sunken logs.

The Harmon Lumber Company began, in the fall of 1883, to improve the stream. A flood-dam, called the "Upper Dam," was built on section 34, town 49 north, of range 33 west. A second dam, called the "Middle Dam," was constructed on section 7, town 42 north, of range 28 west. A third flood-dam was built below this.

The channel of the stream between these dams and below them was deepened and widened, and at some points straightened. Large expenses, estimated by the complainant's witnesses at $30,000, were incurred by the Harmon Lumber Company in this work; nearly all of the improvement being made before the organization of the complainant corporation under the statute.

By the use of these dams, logs could be driven from the upper pond, and along the stream below the upper dam, to

the slack water of the middle pond, and from that pond over heavy rapids to the slack water of the third dam, and from there over rapids just below, and down the stream to mills upon it, and to points where it was navigable without improvement. But without these dams, notwithstanding the other improvements of the channel of the stream, only a small quantity of logs could be got over the rapids and down the stream, and these only at times of very high water in the spring.

In the spring of 1884, three members of the Harmon Lumber Company, to wit, Harmon, Price, and Foster, undertook to organize an incorporated company under the river improvement law (chapter 111, How. Stat.), and filed articles of incorporation in the name of complainant, and asked for and obtained the requisite license from the board of control of the St. Mary's Falls Ship-canal for improving the stream. This license was granted July 31, 1884.

The capital stock of the corporation was $30,000, none of which was ever paid in. It is asserted by the complainant that it owes the Harmon Lumber Company $30,000 for improvements made by the latter company. All the work of improvement has been done by the Harmon Lumber Company, and the expense of the same charged by them to the complainant.

The dams were all completed, and the main work of cleaning out, deepening, widening, and straightening the channel of the stream done, before the license for the improvement of the stream was granted; the work since that time being confined to repairs.

The middle dam, which is the subject of controversy in this case, was not erected upon the lands of the Harmon Lumber Company or the complainant, but upon premises owned by other parties. No lease was obtained of the lands, nor any written permission or license secured to build the dam thereon, or to overflow the premises covered by the waters of the pond.

When about to construct the dam, the Harmon Lumber Company, through Mr. Foster, one of its members, asked J. M. Longyear, an agent of · the Lake Superior Ship-canal Railway & Iron Company, which owned the land upon which it is located, whether his company would have any objections to the construction of said dam, and the making of the other improvements. Longyear stated that there would be no objection, provided no timber was cut, or damaged by overflow. If any timber was cut or destroyed, his company would expect to be paid for it. It is not shown that Longyear had any authority to give permission for the building of this dam. He testifies that he had no such authority.

After the improvements were made and the dams completed, and while the complainant was controlling and operating the stream where the improvements had been made. the firm of White, Friant & Co., consisting of T. Stewart. White, Thomas Friant, and John Rugee, looked over the ground with the view of purchasing lands and timber in that locality.

It appears that White and Friant and one Monroe Miller, who afterwards became an incorporator of the defendant corporation, came there in the fall of 1884, saw what improvements had been · made, the dams as built, and the facilities and capacity of the stream as improved for driving logs, and talked with Mr. Foster, of the complainant corporation, about the improvements and their cost, and inquired what the tolls would be, and if the two companies could run the stream together harmoniously and in a friendly manner.

In the spring of 1885, White, Friant & Co. purchased a tract of pine land near and adjoining the stream, some of which was overflowed by these dams. They also obtained a lease from the Lake Superior Ship-canal Railway & Iron Company of a tract of land which included the premises upon which the middle dam was located, and purchased the pine timber on said tract.

The lease ran for 10 years, and gave them the use of—

" All the rivers, streams, and water-courses thereon, and privileges and appurtenances thereto belonging."

The lands, timber, and the lease so purchased and acquired by White, Friant & Co., were by them transferred to the defendant company soon after its incorporation.

The lands were purchased of the " Two Rivers Manufacturing Co.," of which the pond formed by the middle dam overflows about 100 acres.

The Harmon Lumber Company or the complainant never had any authority or license to overflow these lands.

The defendant corporation, after the transfer of White, Friant & Co.'s interest in the premises to it, commenced at once the cutting of pine logs and banking them upon the stream.

In the spring of 1886, the defendant corporation, having possession of the middle dam, used the same for the purpose of collecting and holding water to flood the stream below to run down its logs.

The Harmon Lumber Company, in the fall of 1885 and winter following, cut and put in the stream a large quantity of logs, having, with those left over from the year before, about 10,000,000 feet. The Harmon Lumber Company logs were above the middle dam, and they were cut and banked in rollways, with the intent of running them down the stream to their mill below these dams and the improvements in the channel. They held their logs back until the defendant corporation ran its logs out. The running of these logs exhausted the water in the ponds, and the Harmon Lumber Company then shut down the gates in the middle dam to raise another head of water. When the ponds were full, and about the twenty-third of August, 1886, the defendants took possession of this middle dam, opened the gate, and let the water out, chained and locked the gate, and built a house

over it and locked that, so as to prevent any one from closing the gate.

Out of this action the present controversy arises.

The complainant, on the fourth day of September, 1886, filed its bill of complaint, upon which a temporary injunction was issued against the defendants. Thereupon the complainant removed the house, closed the gate, and in October of the same year drove its logs down the stream.

The defendants answered the bill, and, upon the pleadings and proofs taken in the cause, the circuit court for the county of Menominee, in chancery, entered a decree that the complainant, as against the defendants, was entitled to maintain, control, and operate the middle dam, and perpetually enjoined the defendants from taking or holding possession of said dam, or attempting to take or hold possession of the same; and from interfering with or preventing complainant from controlling and maintaining such dam for the purpose of raising and holding water and creating floods on the stream for the floating of logs and timber down said stream for such persons as shall desire to float such logs and timber therein; and from interfering with the complainant in closing or opening the gate of said dam for the purpose of furnishing water to drive logs on said stream.

The defendants appeal.

We do not consider it necessary to set out an abstract of the pleadings in the cause, or to notice all the points raised upon the argument in this Court, as there are, under the proofs, two fatal objections to the maintenance of the complainant's bill.

In the first place, the stream where these improvements were made, and the dams built, is not a navigable one in any sense.

Without the improvements no logs could be floated at any season of any year, and, with the improvements without the dams, the running of logs is impracticable at all times, and

only possible for a few days in the spring at the highest stage of freshet water. But a few can be driven during such freshets.

Chapter 111, How. Stat., under which the complainant was organized, does not authorize the formation of corporations to improve any but navigable streams. It was not intended by this statute to create navigable rivers out of creeks or streams which cannot, in their natural condition, be considered navigable in any sense of the term. *Clay v. Pennoyer Creek Improvement Co.*, 34 Mich. 204

The complainant as a corporation, therefore, had no power to subject the lands of other persons to any easement or right of overflow, nor to take lands for the purpose of locating dams or other improvements on the stream; nor were any steps ever taken under the act to condemn any of these lands; nor was any permission or license shown to place the middle dam upon the lands leased by the defendant corporation, or to flood the premises owned by it.

A claim of an oral permission or license was made by the complainant, but the proofs do not sustain such claim. The parties owning the lands, at the time the Harmon Lumber Company built the dam and made the improvements, deny the granting of any such permission or license, and the evidence supports their denial.

There is, therefore, no ground upon which complainant can claim the right to maintain or control this dam, either against the public or the owners of the lands affected thereby. The Harmon Lumber Company built this dam without statutory or any other right; and by no act of the defendant corporation or its grantors has any estoppel been created whereby such company or the complainant has acquired any greater rights than existed at the time of the erection of the dam.

In the second place, the dams were built and the improve-

ments were made before the complainant had life or being as
a corporation.

When the complainant presented to the board of control
of the St. Mary's Falls Ship-canal its plan of improvements
and map of proposed work, the work so planned and mapped
out had already been finished by the Harmon Lumber Com-
pany. The object may have been to legalize, if possible, by
this incorporation under the statute, the unauthorized
improvements and possession of the stream by the Harmon
Lumber Company. It is not necessary to investigate or
determine the legality of the steps taken to incorporate the
complainant, further than this attempt at a beginning.

The statute must be strictly construed, and I am satisfied,
from a careful examination of the act, that the proceedings
taken by the complainant are not contemplated by the law.
The improvements upon any stream are to be proposed and
submitted to this board of control before they are made, and
the board, from the plans and maps laid before them, are to
determine that the—

" Construction of the *proposed* improvement will be a pub-
lic benefit,"—

And to indorse upon the map and plans their consent and
approval,—

" And shall also fix the time within which the same shall
be completed by the company." Section 3849, How. Stat.

The law did not intend that improvements already made,
without any license or authority whatever, should be there-
after legalized and made valid by the incorporation of a
company under this statute. And the application in this case
was made evidently under this view and construction of the
act, as it set forth as " proposed improvement" the work
already done and completed by the Harmon Lumber Com-
pany, with no hint conveyed that any of it had been com-
menced or completed.

The board of control had every reason to suppose from the wording of the application that the complainant, after the consent and approval of the board was obtained, was, under the maps and plans exhibited, going on to improve the river as therein specified. There was nothing in such application to notify the board that this corporation was organized simply to avail itself of the work already performed by unauthorized persons. It is not to be presumed that such consent and approval would have been obtained, if the actual facts had been set forth in the application. The application as filed was a fraud upon the board, and their action was based upon it.

The complainant's bill must be dismissed, and the decree of the court below vacated, with costs of both courts to defendants.

The other Justices concurred