[No. 2909.  Decided November 11, 1898.]

EAST HOQUIAM BOOM AND LOGGING COMPANY, *Appellant,*
v. CHARLES NEESON *et al., Respondents.*

BOOM COMPANIES — IMPROVEMENT OF NON-FLOATABLE STREAM — LIEN
UPON LOGS HANDLED — CONSTITUTIONALITY.

A stream which can be made navigable or floatable by arti-
ficial means only is not a public highway.

The state possesses the right, in the absence of congressional
interference or control, to promote by artificial means the
navigability or floatability of streams within its borders, and
thereby render them more useful and beneficial to the public;
and, in consideration of the expense incurred by boom com-
panies in making such improvements, it is competent for the
legislature to authorize them to charge reasonable compensation
by way of tolls.

Laws 1895, p. 130, § 5 (Bal. Code, § 4391), authorizing boom
companies to sluice, sack and drive all logs and timber products
placed in the bed of any river improved by them for such pur-
pose, upon request of owners, or without such request, in case
of logs lying in such position as to obstruct or impede the drive,
and authorizing the collection of a reasonable toll therefor and
giving a lien upon the logs so handled, is constitutional.

Appeal from Superior Court, Chehalis County.—Hon.
CHARLES H. AYER, Judge.  Reversed.

*George D. Schofield (D. J. Crowley,* and *J. H. Parker,*
of counsel), for appellant.

*Austin E. Griffiths, J. A. Hutcheson, Irwin & Bridges*
(*Greene & Griffiths,* of counsel), for respondents.

The opinion of the court was delivered by

GORDON, J.—This action was brought to foreclose four
liens which plaintiff claimed it was entitled to by reason
of having rendered and performed certain services upon
respondent Neeson's logs in sluicing, sacking, driving, as-
sorting, delivering and booming the same.  The trial in

the lower court resulted in a judgment dismissing the action and for costs, and the plaintiff has appealed therefrom.

The plaintiff is a corporation organized under the laws of this state relating to boom companies, and became incorporated in March, 1895. Within ninety days after filing its articles, it filed in the office of the secretary of state its plat and survey of the shore lines and waters of the east fork of the Hoquiam River, from the south line of section 25, township 18 N., of range 10 W. of the W. M., up to and including sections 8 and 9 in township 20 N., range 9 W., situated in Chehalis county, in this state, and including all portions of said river and all tributary streams between said designated points. Within ninety days after the filing of its plat and survey, it entered upon its duties as such corporation, which duties it has since continued to perform. Plaintiff's incorporators were Robert F. Lytle and Joseph F. Lytle, who, prior to the incorporation of plaintiff, had partially improved said stream by removing some obstructions therefrom, and constructing a dam,—hereinafter referred to as "plaintiff's lower dam,"—such dam being located upon the land of Robert F. Lytle, and also a boom for holding logs, the latter being located in the river at a point below tide water. The plaintiff, upon its incorporation, succeeded to the rights and interests of the said Robert and Joseph Lytle, and continued to improve the stream by removing fallen trees, snags, roots, jams of logs and other obstructions, and by repairing the dam hereinbefore referred to, and constructing another dam (known and hereinafter referred to as "plaintiff's upper dam") at a point on the stream distant about two and a half miles from the lower dam. In its natural condition, and prior to any improvements made by the Lytles thereon, the stream in question was a narrow, crooked stream varying in width from forty

to a hundred and fifty feet, and containing numerous shallows and sandbars. The tide ebbs and flows for about seven or eight miles above the mouth of the river.   Plaintiff's lower dam is situated about seven miles above tide water. Respondent Neeson is the owner of timber land lying adjacent to and on both sides of said stream, above that portion thereof which is included in plaintiff's map of location. In March, 1896, Neeson began the construction of a dam located wholly upon his own land, at a point on the stream distant about three-quarters of a mile above plaintiff's upper dam.   Neeson completed his dam in June, 1896. He also constructed in tide water a suitable boom for holding his logs.   The evidence transmitted to this court satisfies us that, prior to the improvement of this river and the removal of obstructions therefrom, it was wholly unnavigable and non-floatable.   It also satisfactorily appears that the Lytles were the first to improve and remove obstructions from the stream above tide water.   These improvements were commenced by them some time in the fall of 1893.   Immediately upon completing its incorporation, the plaintiff proceeded to further improve the stream, and removed snags, fallen timber, roots and other obstructions therefrom, besides repairing and completing the lower dam and building its upper dam hereinbefore mentioned, expending in such improvements a sum approximating $20,000, and ever since has continued to keep the channel of said stream below its upper dam, and between said dam and the mouth of the river, free from obstructions, and for that purpose has kept, and still keeps, men constantly employed, and, by means of the water stored by its dams, has rendered the stream floatable for the purposes of moving and driving logs down to tide water at all seasons of the year.   It also appears that the annual expense of keeping the stream clear of obstructions, so as to enable the logs to be floated thereon, between plaintiff's upper dam

and tide water, amounts to hundreds of dollars. Plaintiff's dams are constructed in a scientific, workmanlike and proper manner, and the same is true of Neeson's dam. Since the summer of 1895, plaintiff, by reason of its improvements done upon the stream, the removal of obstructions therefrom and the erection of its dams, has been able, ready and willing to sluice, sack and drive the logs and timber products placed in the bed of said stream within the confines of its plat, or delivered into its ponds, and to handle all such logs and other timber products of all persons upon the same terms, without discrimination as to time of sluicing, sacking and driving, and claims to charge and collect for such service reasonable and uniform tolls, not exceeding sixty cents per thousand feet board measure, either on logs, spars or other large timber, which sum was determined by the directors of the plaintiff corporation (pursuant to § 5 of the act of March 18, 1895, Session Laws 1895, p. 130), to be reasonable compensation. In the summer of 1896 the defendant, who, after the incorporation of plaintiff and the erection of plaintiff's improvements, engaged in the business of logging from his own land on said stream, above the upper dam of appellant, floated into appellant's lower dam 734 logs. At that time there were other logs lying in plaintiff's dam belonging to different parties, which the owners desired should be driven to tide water; and it had become the duty of plaintiff, under the act of 1895, *supra,* to sluice and drive such logs down the river; and the position of respondent's logs in plaintiff's dam was such as to impede and obstruct the driving of such other logs unless respondent's logs were also driven. It satisfactorily appears that plaintiff notified respondent Neeson to remove his logs; that Neeson claimed the right to float his logs down the river, and insisted that he could do so if not obstructed by plaintiff's dam.

10—20 WASH.

Upon the question of whether Neeson, by the aid of splashes of water from his own dam, could have floated his logs to tide water, the evidence is very conflicting, but we deem it quite immaterial to determine that question. One fact, and, in our judgment, a controlling one, is clear, viz., that in its natural condition, and but for the expenditure of money upon the part of the plaintiff and its incorporators in the improvement of the stream and the removal of the obstructions hereinbefore referred to, it would have been utterly impossible for respondent to have floated his logs thereon; so that the extent to which this claim on the part of respondent can go is that, in the improved condition of the stream, he would be able to float his logs on down to the river's mouth by successive splashes from the waters of his own dam.

It is well settled that a stream which can only be made navigable or floatable by artificial means is not a public highway. *The Daniel Ball*, 10 Wall. 557; *Diedrich v. Northwestern Union Ry. Co.*, 42 Wis. 248 (24 Am. Rep. 399); *Smith v. Fonda*, 64 Miss. 551-559 (1 South. 757); *Holden v. Robinson Mfg. Co.*, 65 Me. 216; *East Branch Sturgeon River Imp. Co. v. Lumber Co.*, 69 Mich. 212 (37 N. W. 192); *Brown v. Chadbourne*, 31 Me. 9 (50 Am. Dec. 641); *Thunder Bay River Booming Co. v. Speechly*, 31 Mich. 335 (18 Am. Rep. 184); *Morgan v. King*, 35 N. Y. 459 (91 Am. Dec. 58); *Weise v. Smith*, 3 Ore. 445 (8 Am. Rep. 621); 16 Am. & Eng. Enc. Law, pp. 243, 244.

But suppose we concede (what the evidence fails to establish) that at occasional periods, of brief duration, freshets occur, which render the stream in its natural condition floatable for logs and other timber products; how is the case affected by that fact? If there is a principle applicable to the present case more firmly settled in the law than any other, it is that, in the absence of congres-

sional interference with, or control of, the subject, the
state possesses the undoubted right to promote, by arti-
ficial means, the navigability or floatability of rivers and
streams within its borders, and thereby render them more
useful and beneficial to the public. *Pound v. Turck,* 95
U. S. 459; *Huse v. Glover,* 119 U. S. 543 (7 Sup. Ct.
313); *Wisconsin River Imp. Co. v. Manson,* 43 Wis. 255
(28 Am. Rep. 542); *Palmer v. Com'rs of Cuyahoga
County,* 3 McLean, 226; *Carondelet Canal & Nav. Co. v.
Parker,* 29 La. An. 431 (29 Am. Rep. 339); *Duluth Lum-
ber Co. v. St. Louis Boom & Imp. Co.,* 17 Fed. 419; *Os-
borne v. Knife Falls Boom Corp.,* 32 Minn. 412 (21 N.
W. 704, 50 Am. Rep. 590); Cooley, Constitutional Limi-
tations (5th ed.), pp. 729-731; *Benjamin v. Manistee Riv.
Imp. Co.,* 42 Mich. 628 (4 N. W. 483); *Wadsworth v.
Smith,* 11 Me. 278 (26 Am. Dec. 525); *Kellogg v. Union
Co.,* 12 Conn. 7; *Monongahela Bridge Co. v. Kirk,* 46
Pa. St. 112 (84 Am. Dec. 527); *Lake Shore & M. S. Ry.
Co. v. Ohio,* 165 U. S. 365 (17 Sup. Ct. 357); *Willson v.
Black Bird Creek Marsh Co.,* 2 Pet. 245; *Sands v. Im-
provement Co.,* 123 U. S. 288 (8 Sup. Ct. 113).

In *Pound v. Turck, supra,* the federal supreme court
had this question under consideration, and, in the course
of the opinion, say:

" There are within the state of Wisconsin, and perhaps
other states, many small streams navigable for a short dis-
tance from their mouths in one of the great rivers of the
country, by steamboats, but whose greatest value in water-
carriage is as outlets to sawlogs, sawed lumber, coal, salt,
etc. In order to develop their greatest utility in that re-
gard, it is often essential that such structures as dams,
booms, piers, etc., should be used, which are substantial
obstructions to general navigation, and more or less so to
rafts and barges. *But to the legislature of the state may
be most appropriately confided the authority* to authorize
these structures where their use will do more good than
harm, and to impose such regulations and limitations in

their construction and use as will best reconcile and accommodate the interest of all concerned in the matter."

And the same authorities and numerous others hold that it is competent for the state to permit corporations to be formed for the purpose of improving the navigability or floatability of such streams, and allow compensation therefor, by way of tolls or otherwise. It would, indeed, be most unfortunate if this was not the law. In a state like ours, especially the western portion of the state, which abounds in numerous small streams and rivers running through magnificent forests, and which furnish the sole or principal outlet for bringing the product of these forests to market, it is of the utmost importance that the legislature should possess the power to designate agencies for the purpose of improving these highways and rendering them of practical utility and benefit. In their natural condition, and without improvement by artificial means, many of these streams and rivers for the greater portion of the year—and many during the entire year—are wholly unsuited and valueless for this purpose; but, by the removal of natural obstructions and the construction of suitable dams for storing water, they can easily and readily be made valuable conduits and arteries for the prosecution of the important business of lumbering and other commerce. These conditions existing, the legislature wisely provided by the act in question (Laws 1895, ch. 72, p. 128, Bal. Code, §§ 4387-4394), for the incorporation of companies to improve these streams, and empowered them to charge reasonable compensation by way of tolls for the expense incurred in making such improvements. Similar statutes have long been in force in the great lumbering states of Maine, Michigan, Wisconsin and Minnesota; and, while it is possible that in some instances the powers conferred have been abused, it is believed that, in the main, they have contributed largely to the public welfare,

and, for any abuse of their powers or neglect to prosecute their public duties, their franchises are revocable at the suit of the proper law officer.   The improvements of the plaintiff in this case were made pursuant to authority conferred by the statute and in conformity to its provisions; and, in consideration of the increased facilities for lumbering and commerce which these improvements afford the public, it was entirely competent for the legislature to authorize the plaintiff to charge compensation for services performed by it in sluicing logs through its dams, and driving and performing other services thereon in their passage to tide water.   The liens which are the subject of the present suit were for services so performed.

But it is also urged that these services were not performed at defendant's request, or by or with his consent; and it is urged that so much of § 5 of the act of 1895, *supra,* as may be construed to authorize a corporation to take charge of the logs of a non-consenting owner, and handle and impress a lien upon them for such services, is unconstitutional.   This contention cannot be sustained. The precise question was raised and passed upon adversely to defendant's claim in *Duluth Lumber Co. v. Boom Co., supra.*   See, also, *Osborne v. Nelson Lumber Co.,* 33 Minn. 285 (22 N. W. 540) ; *Merriam v. Bowen,* 33 Minn. 455 (23 N. W. 843) ; *Chapman v. Keystone, etc., Mfg. Co.,* 20 Mich. 358 ; *Wisconsin River L. D. Ass'n v. Comstock Lumber Co.,* 72 Wis. 464 (40 N. W. 146).

Various objections are urged to the sufficiency of the liens.   They relate principally to the sufficiency of the notices, and to the allegations of the complaint declaring thereon.   After a careful consideration of the various objections, we think they are without substantial merit, and that the services for which liens are claimed were only such services as, in contemplation of the statute (§ 5, *supra*) may be secured by lien; that the description of the

property is sufficiently definite; and that, under its articles of incorporation, the plaintiff in this case possesses all the powers conferred by §§. 1590 to 1598, 1 Hill's Code (Bal. Code, §§ 4378-4386), and by the act of 1895, hereinbefore referred to.

The judgment of the lower court must be reversed and the cause remanded, with direction to enter judgment in plaintiff's favor for the amount claimed in the complaint, together with $150, which is considered a reasonable attorney's fee to be allowed counsel for foreclosing these liens, and directing that the property in question be sold to satisfy such judgment and all costs that have accrued or may hereafter accrue in this action.

SCOTT, C. J., and DUNBAR, REAVIS and ANDERS, JJ., concur.