### JEROME P. KROLL v. THOMAS NESTER.

*Log-driving—Compensation for services in breaking jams.*

The statutory right of action for services in breaking jams caused by another's logs, and for driving the logs themselves, where it becomes necessary to do so to enable the plaintiff to get his own logs down a stream that is obstructed by the other's, does not arise when the stream is not naturally in a navigable condition, and the plaintiff

has had to resort to artificial means, such as flooding, to create any floatage whatever.

Error to Saginaw. (Gage, J.) Oct. 9.—Dec. 20.

ASSUMPSIT. Plaintiff brings error. Affirmed.

*Tarsney & Weadock* and *C. S. Draper*, for appellant. A riparian has a right, in using the stream, to diminish, retard or accelerate its natural current to some extent: *Parker v. Hotchkiss* 25 Conn. 321; *Davis v. Getchell* 50 Me. 602; and to detain the water in dams in order to use it in flooding, in working mills: *Hayes v. Waldron* 44 N. H. 580; what is a reasonable use must depend on the conditions: *Honsee v. Hammond* 39 Barb. 89; *Gillett v. Johnson* 30 Conn. 180; *Tourtellet v. Phelps* 4 Gray 370; and is a question for the jury: *Miller v. Miller* 9 Penn. St. 74; *Snow v. Parsons* 28 Vt. 459; and if the detention of the water is necessary to the reasonable enjoyment of the stream a proprietor below is remediless: *Davis v. Winslow* 51 Me. 290; *Chandler v. Howland* 7 Gray 348; *Hartzall v. Sill* 12 Penn. St. 248; *Dumont v. Kellogg* 29 Mich. 420; *Buchanan v. Grand River Log Co.* 48 Mich. 365.

*L. T. Durand* and *Hanchett & Stark* for appellee. The public easement in a stream is restricted to its capability for use in the ordinary and natural condition of the water course: *Thunder Bay River Booming Co. v. Speechly* 31 Mich. 336; *Morgan v. King* 35 N. Y. 459; *Treat v. Lord* 42 Me. 552; *Am. River Water Co. v. Amsden* 6 Cal. 443; *Holden v. Robinson* 65 Me. 218; *Buffalo Pipe Line Co. v. N. Y. & L. E. & W. R. R. Co.* 10 Abb. N. C. 107; *Olson v. Merrill* 42 Wis. 212; Wood on Nuisances § 587; Angell on Watercourses § 537; *McLaren v. Caldwell* 19 Can. L. J. 49; a stream which can only be made floatable by artificial means is not a public highway: *Moore v. Sanborn* 2 Mich. 519; *Brown v. Chadbourne* 31 Me. 9; a dam unauthorized by law is an unlawful structure: Const., Art. xviii, § 4; Cooley on Torts 584; *Powers v. Irish* 23

Mich. 429; *Clay v. Pennoyer Creek Imp. Co.* 34 Mich. 208; the right to charge toll for the use of a lock or for passage over a highway is a franchise which the sovereign only can confer: *Boykin v. Shaffer* 13 La. Ann. 129; *Sellers v. Union L. Co.* 39 Wis. 525; *Weatherby v. Meiklejohn* 56 Wis. 78; *Tewksbury v. Schulenberg* 41 Wis. 593; *Volk v. Eldred* 23 Wis. 410; and the right can be conferred only in accordance with the provisions of the act relating to the improvement of streams: *Benjamin v. Manistee River Improvement Co.* 42 Mich. 628; *Lansing v. Smith* 4 Wend. 9; *Black River Flooding Ass'n v. Ketchum* 54 Wis. 314; the statute authorizing one to collect for his services in breaking jams (Comp. L. § 1660) as amended by Act 85 of 1879, can only be applied to navigable streams or such as can be used in the natural stage of the water in them for floating; other streams are private property: *Marsh v. Colby* 39 Mich. 626; *Wadsworth v. Smith* 11 Me. 281; *Treat v. Lord* 42 Me. 564; *Munson v. Hungerford* 6 Barb. 265; *People v. Platt* 17 Johns. 209.

COOLEY, J. Much of what was involved in this case in the circuit court was disposed of by the verdict of the jury, and will be the subject of no discussion here. What remains to be considered is, whether the trial judge was correct in his instruction whereby the jury were required to reject a portion of the plaintiff's claim.

The action was brought to recover for labor and expenses in running and driving logs for the defendant on the Tittabawassee river during the season of 1881. The plaintiff claimed to recover, not upon any express employment by the defendant, or any express undertaking to compensate him for either labor or expenses, but upon an implied contract springing from the statute and the facts in proof. The statute relied upon is the act of 1861. Laws 1861 p. 557 as amended in 1863—Comp. L. § 1660—and again in 1879 (Public Act 85). This statute, as it read when the supposed cause of action arose, was as follows:

"That if any person or persons shall put or cause to be

put into any lake, river, creek or stream of this State, any logs, timber or lumber for the purpose of floating the same to the place of manufacture or market, and shall not make adequate provisions and put on sufficient force for· breaking jams of such logs, timber or lumber in or upon such lake, river, creek or stream, or for running or clearing the same from the banks or shores thereof, or for running or driving the same, and shall thereby hinder the removal of any logs from the banks or shores thereof, or shall thereby obstruct the floating or navigation of such lake, river, creek, or stream, it shall be lawful for any other person, company, or corporation engaged in floating or running logs, timber, or lumber in such lake, river, creek or stream so obstructed, to cause such jams to be broken, and such logs, timber, or lumber to be run, driven and cleared from the banks of such lake, river, creek or stream at the cost and expense of the person or persons owning such logs, timber or lumber; and such owner shall be liable to such person, company or corporation for such cost and expense, and such company, person, or corporation so causing such jams to be broken, or such logs, timber or lumber to be run, driven or cleared, may have a lien on such logs, timber, or lumber for his or their reasonable charges and expenses for breaking jams and running, driving and clearing the same, and shall be entitled to take and retain possession of such logs, timber or lumber wherever the same may be found, or so much thereof as may be necessary to satisfy the amount of such charges and expenses and all costs thereon until the same shall be determined, satisfied and paid in the manner hereinafter prescribed."

Another section authorized an action of assumpsit to recover the amount of the claim, and plaintiff brought such a suit instead of attempting the enforcement of a statutory lien.

There was evidence which warranted the jury in finding that defendant, in the season of 1881, put a large quantity of logs into the Tittabawassee river for the purpose of floating the same to a place of manufacture or market; that he failed to make adequate provision for breaking jams, or for running or driving the same; that the navigation of the river was, in consequence, obstructed; and that the plaintiff, who was running logs in the river behind those of the defendant, in order to move forward his own logs, was

compelled to and did expend labor and money upon the logs of the defendant, and that the expenditures were continued until about the 15th day of May, when it became necessary to resort to artificial means to produce sufficient current for further floatage. For the labor expended and the expense incurred up to the day named, the court permitted a recovery, and the question now to be decided concerns what was done afterwards.

The artificial means resorted to for the purpose of producing a sufficient current were—*first*, the narrowing of the stream at one point by a dam extending a part of the way across it; and *second*, the bringing down of floods from reservoirs created by dams on the tributaries of the river. All these dams were constructed for this express purpose, and they were either under the control of the plaintiff or he was permitted to make use of them to create floatage in the dry season. By means of them he was enabled to flood and run the logs of the defendant, and also his own logs, within the booms of the Tittabawassee Boom Company before the fall floods set in.

The defendant insists that he had a right to cast his logs in the river, and leave them there to be floated at such times as the river was navigable in its natural state, and that he could not be held responsible for any money or labor expended in creating artificial navigation, in the absence of contract on his part to pay for it. Of this opinion was the circuit judge, and under his instructions the jury rejected the claim.

Much of the language of the circuit judge in submitting the case to the jury was so general that it would be applicable to cases that in their circumstances might be so far different as to make other considerations important, and to leave room for argument whether a different conclusion ought not to be reached. But, restricting the application of his charge, as the jury were required to do, to the exact case in proof, we are compelled to agree with the circuit judge that notwithstanding the apparent hardship of the case the plaintiff has no redress.

No claim is made on the part of the plaintiff that he is entitled to recover except under and upon the provisions of the statute, and he went to the jury upon the statute and upon what he claimed to have done in reliance upon its provisions. We have therefore only to see whether he brings himself within the statute.

Previous to the amendment of 1879 the statute in terms applied only to "navigable" rivers, creeks and streams; but by that amendment lakes were included, and the word "navigable" was dropped out. Much reliance is placed upon this change by the plaintiff; and it is contended that the purpose was to extend the statutory remedy to non-navigable waters, and so permit parties to recover where they had performed valuable service on such waters, and also where, in the dry seasons, they had kept up the floatage in the streams commonly navigable, as the Tittabawassee is, by means of reservoirs and other artificial means. On the other hand, the defendant contends that the statute applies only to natural highways, and while they are such in their natural condition; and that it does not assume to give a right to create an artificial navigation, and to charge for floating the logs of non-assenting parties by means of it.

Without stopping to consider how extensive were the changes which were introduced by the amendment of 1879, or whether a stream of the magnitude and public importance of the Tittabawassee is to be regarded as a public highway at all times, notwithstanding there may be seasons when there is no valuable floatage upon it in its natural condition, we are of opinion that it is only when the actual "floating or navigation," or the labor preparatory thereto, is hindered or obstructed, does the statute assume to give any right of action against non-assenting parties; and that the floating or navigation intended is that which exists in its natural state, and not that which parties may make by means of dams, locks, sluices or in any other manner, when there is none without the artificial aids. We take the statute as we find it, and it is plainly restricted as above indicated, and has for its purpose the protection and full

enjoyment of existing rights of floatage and navigation, and not of rights which may artificially be brought into existence. Nothing· in the language of the statutes gives any indication that artificial floatage was within the legislative contemplation in enacting it.

If it had appeared in the case that there was valuable floatage to a limited extent in the natural condition of the stream during the whole season, and that it was rendered unavailable because of the vast quantity of logs cast into the stream by the defendant and others, so that it became necessary to resort to artificial means to make an actual navigation available, the case thus presented would differ from the one which the judge covered by his instructions in this case. It may be that on the evidence it might have been claimed that such was the case during the season of 1881; but as the plaintiff did not ask to go to the jury upon any such theory, the record does not call for any opinion from us upon it. Neither, it may be added, does the record raise the question of the right of any one to make the bed of the river a storage ground for logs during the dry season to the prejudice of those who, by means of flooding or otherwise, might desire to float their own logs to a place of manufacture or market.

The judgment must be affirmed with costs.

The other Justices concurred.