OLIVER B. SHAW v. NATHAN B. BRADLEY, ELMER BRADLEY
AND FRED W. BRADLEY.

*" Log-lien law," its constitutionality—Independent contractor, as claimant—
Personal judgment under—Recoupment, necessity for notice of—
Lien under Sec. 2035 How. Stat., when it does not exist.*

1. An objection that the log-lien law, so called, being Act 145, Public
Acts of 1881, is unconstitutional, "because it undertakes to provide
for a process whereby a person's property may be seized and sold
without the service of process, either actual or constructive, judicial,
executive or administrative, and where there are no contract rela-
tions, express or implied, between the owner of the logs and the
party who obtains the judgment," is not open to defendants in a
suit where the record discloses that the claim sought to be enforced
is for driving saw logs under a written contract with the defendants
—the owners of said logs—who were personally served with the pro-
cess by which the suit was commenced.

2. It is competent for the Legislature to provide for security, by way of
a lien in behalf of a laborer, upon the property on which the labor
was performed, with a remedy for its enforcement by attachment of
said property, in cases where the possession of the property is not
retained by the laborer, and no difficulty can arise in such enforce-
ment. If cases arise in which the law cannot be enforced because
of its invasion of vested rights, or failure to bring the proper par-
ties before the court, this is not one of them, and the question of
such enforcement need not be anticipated.

3. A party who contracts with the owner to drive and deliver logs, cedar
posts and telegraph poles, for an agreed compensation, is within the
very terms of the act, it conclusively appearing that the parties did
not intend by the contract that the party claiming the lien should
personally perform the services contracted for.

4. Where in such a case the declaration avers the performance of ser-
vices and labor in breaking rollways and running and driving
defendants' logs, the amount due therefor, and the promise of
defendants, in consideration of the premises, to pay plaintiff said
sum of money and their refusal so to do, and plaintiff introduces
evidence tending to show a full performance of the contract on his
part, he may recover judgment for the amount shown to be due, if
defendants have been personally served with process, notwithstand-
ing the trial court rejects proof of the steps taken under Act 145 to
enforce plaintiff's claim, as a lien, because of the written contract in
question.

5. In such a case testimony offered by defendants to show that a third party had a large amount of saw logs afloat in the river, above those plaintiff had contracted to drive for defendants, and that by reason of plaintiff's failure to put on a sufficient force of men to keep the river unobstructed this party was obliged to drive defendant's logs in order to drive his own, and claimed pay for such driving, of defendants, under section 2035 How. Stat., was properly excluded. The claim had not been established, liquidated or paid and was inadmissible under the plea of the general issue, no notice having been given of such defense.

6. The act in question expressly authorizes a personal judgment as well where a lien is found to exist as where the amount found to be due is not a lien upon the property, is remedial, and was enacted to provide additional security to the laborer, and should be liberally construed to effectuate that object.

7. Section 2035 How. Stat., before cited, does not give a lien for removing obstructions upon a stream which requires the aid of artificial means in running logs, by way of dams, flooding, etc.   *Kroll v. Nester*, 52 Mich. 70.

Error to Arenac.   (Green, J.)   Argued November 12, 1885.   Decided January 20, 1886.

Attachment under "log lien law."   Defendants bring error.   Affirmed.   The facts are stated in the opinion.

*Simonson, Gillett & Courtright*, for appellants:

Act 145 Session Laws of 1881 is unconstitutional [for reasons see head note 1]: Art. 6, Sec. 32, Constitution; *Parsons v. Russell*, 11 Mich. 113; *Jacobs v. Knapp*, 50 N. H. 71; *Munger v. Lenroot*, 32 Wis. 541. [Chief Justice Dixon's opinion.]

A day in court is a right in judicial proceedings: *Weimar v. Bunbury*, 30 Mich. 201.

If the proceeding is void *ab initio* or in excess of the powers of the court, appearing and pleading cannot of themselves confer jurisdiction: *Pine Saw Logs v. Sias*, 43 Mich. 356; *McCaslin v. Camp*, 26 Mich. 390; *Allen v. Carpenter*, 15 Mich. 32; *Woodruff v. Ives*, 34 Mich. 320.

The relation of master and servant between the parties to this suit did not exist, and plaintiff was not, strictly speaking, an employee of defendants, nor a laborer within the meaning of the statute: *Moore v. Sanborne*, 2 Mich. 520; *Chicago & Northeastern R. R. Co. v. Sturgis*, 44 Mich. 538.

The declaration is on the common counts, and if held to be a sufficient count for work and labor it is not a proper count upon which to base a judgment upon a special contract not fulfilled: 2 Greenl. on Ev., § 104; *Chicago & Northeastern R. R. Co. v. Sturgis*, 44 Mich. 538; *M. S. & N. I. R. R. Co. v. Auditor General*, 9 Mich. 449; *Wilson v. Wagar*, 26 Mich. 465.

The testimony offered under the notice of recoupment, of the driving of the logs by Scott because of plaintiff's failure to perform his contract, was admissible under the general issue: Chitty on Pleadings, vol. 1, 495; 1 Green's Practice, 217; and if Scott did the work under these circumstances, in order to run his own logs, he had a valid claim against defendants, enforceable in assumpsit: *Chapman v. Keystone Co.* 20 Mich. 358; *Wood v. Ayres*, 39 Mich. 350; *Butterfield v. Gilchrist*, 53 Mich. 22.

*L. McHugh and Shepard & Lyon*, for plaintiff:

The appearance and plea by the defendants, generally, was a waiver of their right to take advantage of the manner in which the court had acquired jurisdiction over them: *Pine Saw Logs v. Sias*, 43 Mich. 357; *Thompson v. Mich. Mutual Benefit Association*, 52 Mich. 522.

CHAMPLIN, J. On the third day of March, 1884, plaintiff entered into a written contract with defendants to break, run, drive and deliver in the Au Gres Boom Company's limits, a certain lot of pine saw-logs, cedar posts, and telegraph poles, situated on the bank of the west branch of the Au Gres river, the work to begin as soon as the stage of water in the spring of 1884 will permit of its being done, and to be finished as soon as possible. Plaintiff agreed to take a clean rear, and use every endeavor to get the drive down in good season. The defendants agreed to pay twenty-five cents for each thousand feet for the saw-logs, five cents for each cord of cedar posts, and three and one-half cents apiece for the telegraph poles; these sums to be paid upon the bank-scale, and to be due when the logs are all below the forks of the river, and inside the boom company's limits; the work to be subject to supervision by said defendants, or their agent. On the seventh of June, 1884, the plaintiff filed a claim of lien for running the logs mentioned in the

above contract, and on the twenty-first of June following commenced proceedings by attachment issued out of the circuit court for the county of Arenac to enforce such lien under the provisions of Act No. 145 of the Session Laws of 1881. By virtue of the writ, the sheriff seized the logs, posts and poles of the mark described in the contract, then in the "Loggers" boom, at the mouth of the Au Gres river, and served the writ upon Nathan B. and Elmer E. Bradley, two of the defendants, and members of the firm of N. B. Bradley & Sons. Fred. W. Bradley was not served. Service was also made upon the foreman and treasurer of the boom company. On the eleventh of June, 1884, plaintiff filed his declaration in the form specified in the act, claiming an indebtedness of $314.73 for labor and services done and performed for defendants in breaking rollways and running and driving pine saw-logs, cedar timber, posts and telegraph poles marked (76), 76 and 78, and alleging that the defendants, in consideration of the premises, undertook and promised the plaintiff to pay him the said sum of money on request, and that defendants neglected to do so, to plaintiff's damage, etc. On the twenty-second day of July, 1884, the defendants pleaded the general issue to plaintiff's declaration, and gave notice that the labor and services for which the plaintiff claimed a lien were performed under a special contract dated on, to wit, March 3, 1884, and set forth the substance of the contract, and alleged the plaintiff wholly neglected and failed to perform the said contract in this, that he did not put on a sufficient force of men and tools, etc., to get the drive down in good season, and wholly neglected and failed to drive said logs, cedar posts and telegraph poles, below the forks of the Au Gres river into the boom company's limits, to solid jam, and did not take a clean rear, and did not commence said operations as soon as the stage of water in the spring of 1884 would permit of its being done, to defendant's damage of $1,000.

When the case came on for trial, the plaintiff offered in evidence a statement of lien under the act above mentioned, to the introduction of which, and of all proceedings which

go to establish a lien, the counsel for defendants objected. It was then admitted that whatever services were performed by plaintiff on the logs of defendants, were so performed under the terms of a written independent contract between the parties to the suit; and thereupon the court sustained the objection, and excluded the evidence. The written contract was then proved, and introduced in evidence, against defend- ants' objection that it was incompetent and immaterial under the form of the declaration in the cause, and because the court had ruled that there was no lien. The plaintiff then gave evidence tending to show that he drove the logs, cedar posts and telegraph poles of the defendants specified in the contract, and that he commenced operations under the contract as soon as the state of the water would permit ; that he put on a sufficient force of men to properly perform said work, and drove all the logs, cedar posts and telegraph poles, as required by said contract, and left a clean rear.

Under this statement of the record, the defendants claim :

*First*, that act No. 145, Sess. Laws 1881, is unconstitutional, and that defendants waived no right by appearing and plead- ing to the declaration.

*Second*, that an independent contractor is not entitled to a lien, under the provisions of this act, under any circumstances, and that, therefore, he cannot recover a personal judgment in a proceeding instituted under the said statute, although the jury may find that he has no lien.

*Third*, that the plaintiff cannot recover for a balance due on a written contract, under the form of the declaration in this cause, and the court erred in admitting any evidence there- under.

In support of the first point, it is urged that the law is unconstitutional, because it undertakes to provide for a pro- cess whereby a person's property may be seized and sold without the service of process, either actual or constructive, judicial, executive or administrative, and where there are no contract relations, express or implied, between the owner of the logs and the party who obtains the judgment.

I do not think the objection raised as to the unconstitution- ality of the act, is open to the defendants in this case. The

record shows that there were contract relations between the plaintiff and the defendants, and that they were personally served with the process by which the suit was commenced. I have no doubt but that it is competent for the Legislature to provide for security, by way of a lien in behalf of a laborer, and also to provide a remedy for the enforcement of such lien by attachment in cases where the possession of the property upon which the labor is performed is not retained by the person performing such labor. No difficulty can arise in the enforcement of the lien in a simple case of a contract between the owner of the logs or other property subject to lien and the person or persons performing the labor. If there may be cases in which the law cannot be enforced because of its invasion of vested rights or failure to bring the proper parties before the court, this is not one of them, and the difficulties which may in some cases arise in enforcing its provisions need not be anticipated.

The second and third objections raised by defendants may be considered together. It is first claimed that an independent contractor is not entitled to a lien, under the provisions of this act, under any circumstances. But what is meant by an "independent contractor?" As applied to the facts as disclosed by this record, I suppose it must refer to a party who enters into a contract with the owner of the property to drive and deliver the logs, cedar posts and telegraph poles for an agreed compensation. Such a contractor, in my opinion, is within the very terms of the law giving a lien to any person who may perform any labor or services in banking, driving, or running any logs, timber, cedar posts, or telegraph poles in the State, for the amount due for such labor or services. There must be a contract, express or implied, to support a lien; and it never arises, unless by express provision of the statute, where no contract relations exist. The language of the statute, "that any person or persons that perform any labor or services in cutting," etc., under the common application of the maxim, "*qui per alium facit, per seipsum facere videtur*," is legally applicable to the general contractor having servants or sublaborers under him. This

is the natural construction of the law, and is the uniform construction given to the law relative to liens upon real estate for the labor and materials entering into improvements thereon. The lien is created by the statute, but it is essentially dependent upon the existence of contract and the obligation of debt arising out of the performance of the stipulations thereof by the laborer: *Holmes v. Shands*, 26 Miss. 639; *Sodini v. Winter*, 32 Md. 130. By the terms of the statute, the lien is given for the amount due for labor or services performed in driving the logs, etc. This language implies that a contract has been made for the performance of such service. In passing upon a similar statute of the state of New Hampshire, the court said:

"The general owner, in many cases, undoubtedly contemplates that the work will not be performed by the individual services of the party alone with whom he contracts, and by necessary implication, gives the contracting party authority to employ subcontractors and agents, as the necessities of the occasion may demand:" *Jacobs v. Knapp*, 50 N. H. 71.

Such was the case here. The facts and circumstances relating to and surrounding the transaction show conclusively that the parties did not intend, by the contract entered into, that the plaintiff should personally perform the services. That would have been impossible: *Hall v. Tittabawassee Boom Co.*, 51 Mich. 402. It was therefore contemplated that he would employ a sufficient force of laborers to perform the work. One of the objections urged by defendants in the notice given under the plea of the general issue was that plaintiff neglected and failed to put on a sufficient force of men and tools, etc., to get the drive down in good season. Whether the statute, in declaring that "the words 'person' or 'persons' in the first section shall be interpreted to include cooks, blacksmiths, artisans, and all others usually employed in performing such labor and services," would operate to give a lien to cooks, blacksmiths, etc., between whom and the owner there exist no contract relations, is not necessary now to determine. The mention of these certainly does not exclude persons performing labor and services under a con-

tract, from the benefits designed by the act. The second objection, therefore, being based upon an erroneous premise, the conclusion drawn therefrom is equally erroneous.

It is true that the court below ruled that no evidence could be received of the steps taken under the act to enforce the plaintiff's claim as a lien, because of the written contract between the parties to the suit; but in this the court erred, and the plaintiff then proceeded to obtain a personal judgment for the amount of his claim. If the statute permits this to be done where no lien in fact exists under its provisions, there is no reason why it may not be done in this case if the declaration is sufficient to allow it. The plaintiff gave evidence tending to show that he had fully performed the contract on his part; and where a contract has been fully performed a party may, in general, recover under the common counts. Such right to recover is based upon the undertaking which the law imputes to the defendant as a consequence of the full execution of the special agreement by the plaintiff, and is co-extensive with the past consideration involved in his performance of the special agreement: *Begole v. McKenzie*, 26 Mich. 472. There are well-recognized exceptions to the rule, such as contracts for the payment of stipulated damages, and other cases where the cause of action is made to depend upon the writing which the parties have executed. The declaration in this case does not contain the common counts, but the special count under the statute does contain substantially the averments which are essential to a common count. It avers the performance of services and labor in breaking roll-ways, and running and driving defendants' logs, and that there is due to plaintiff $314.73 therefor, and that, in consideration of the premises, the said defendants undertook and promised the plaintiff to pay him the said sums of money on request, and that they had neglected and refused so to do. The declaration is sufficient to permit a recovery, based upon the undertaking which the law imputes to the defendants, upon equitable principles, to pay for such labor and services after the contract has been fully performed by the plaintiff. Were it otherwise the declaration might be

considered as amended after verdict to correspond to the proofs.

But the more serious question arises whether where it is expressly found that no lien exists, a party is entitled to a personal judgment against the defendant as in ordinary civil actions for the indebtedness found to be due from defendants to the plaintiff. The statute which first authorized a lien for labor or services upon logs and timber was enacted in 1873: Pub. Acts 1873, p. 466. This act was very general and incomplete. It authorized proceedings by attachment, to enforce the lien against the logs and timber, and the process and proceedings were to be controlled by the general law relating to attachments, and it enacted that "all suits and proceedings in these premises, in the circuit court, shall be commenced and prosecuted as any other civil suit, with the power and provision of proceedings by attachment against the property upon which lien is claimed or founded, as is provided in proceedings by attachment" under the general statute. This statute came before this Court for consideration in the case of *Clark v. Adams*, 33 Mich. 159, and it was there held that "the right and remedy are bound up together, and must be construed together;" that "a suit under this law must be carried out under it, and it is one *in rem* to enforce a lien, and not for the recovery of personal damages. Under no circumstances can the party prosecuting the proceeding go on, and use it as a suit commenced by summons for the recovery of damages, as may be done in particular cases under the general attachment law;" that "a personal judgment is not authorized." Again in *Haifley v. Haynes*, 37 Mich. 535, it was held that the lien for cutting logs under the act of 1873 could not be enforced as against those who have purchased from the debtor without notice of the claimant's lien, as shown by his petition on file, or by his actual possession. This act was amended in 1879 and again in 1881, by making the proceedings more specific, and extending the remedy to authorize judgments *in personam* where it should be found that no lien in fact existed: Pub. Acts 1881, No. 145. This act

provides that, in all suits thereunder, the person, company, or corporation liable for the payment of the debt or claim shall be made the party defendant. No attachment can be executed unless the plaintiff, or some one in his behalf, shall make and annex thereto an affidavit stating that the defendant named therein is indebted to the plaintiff in the writ, specifying the amount as near as may be, over and above all legal set-offs, and that such indebtedness is due for and on account of such labor and services on such logs, etc., mentioned in the writ, as entitles the plaintiff to a lien thereon, and that a statement of lien as by the act required has been duly filed. The attachment is to be served like ordinary writs of attachment, except that no inventory or appraisement of the property is necessary, and the pleadings and all subsequent proceedings are to be the same as in other cases of attachment except as therein provided. A form of declaration which may be used is given. Section 12 enacts:

"In all suits or attachments prosecuted under the provision of this act, the court, jury, or justice of the peace who shall try the same, or make an assessment of damages therein, shall, in addition to finding the sum due the plaintiff, also find that the same is due for labor and services performed upon the logs, timber, posts, ties, poles, bark, bolts, or staves described in the declaration, and is a lien upon the same; and the court or justice of the peace, as the case may be, shall render judgment in accordance with such finding, and execution shall issue therefor, and such execution, in addition to the commands in ordinary executions, shall command that the said logs, timber, posts, ties, poles, bark, bolts, or staves, or so much thereof as shall be necessary for that purpose, shall be sold to satisfy such judgment, and all costs, charges, and disbursements: *Provided, however*, that if the court, jury, or justice of the peace shall find that the amount due the plaintiff is not a lien upon the property described in the declaration, the plaintiff shall not be nonsuited thereby, but shall be entitled to judgment as in other civil actions; but in such case said plaintiff shall not recover or tax any costs arising from the filing of the statement of lien, nor for officer's fees or expenses incurred relative to the property seized."

Section 13 provides that the proceedings for the enforce-

ment of the lien provided for in the act are intended as an additional remedy, and not to prevent the collection of the claim by the ordinary common-law provisions.

It will be seen from the foregoing that the statute expressly authorizes a judgment *in personam*, as well where a lien is found to exist as where the amount found due is not a lien upon the property. The statute is remedial, and was enacted to provide additional security to the laborer, and should be liberally construed to effectuate that object. In the present case, if no lien did in fact exist, there is no legal obstacle in pursuing the remedy commenced to enforce a lien to obtain a personal judgment against the defendants for the amount found to be due plaintiff for running the logs, cedar posts and telegraph poles.

The testimony of the defendants to prove that Mr. Scott had logs in the river above the drive of plaintiff, and that plaintiff did not put on sufficient force of men to keep the river unobstructed for Scott to drive his logs, and that he put men upon plaintiff's drive to get them out of the way of his logs, and claimed pay for his services from defendants' men, was rightly excluded. The claim had not been established; nor the amount liquidated or paid. It could not be introduced under the plea of the general issue, and no notice had been given of such defense.

There was some evidence tending to show that this stream was not navigable in its natural state at the time Scott's men worked upon the logs driven by plaintiff, and that Scott had control of the dams upon the river. We have held that there is no lien for removing obstructions upon a stream which requires the aid of artificial means in running the logs by means of dams, etc. : *Kroll v. Nester*, 52 Mich. 70.[1]

The judgment is affirmed.

The other Justices concurred.

---

[1] Act No. 66, Session Laws of 1887, approved April 13, 1887, and which took immediate effect, amends sec. 2035, by making it applicable to any "lake, river, creek or stream of this State," which is navigable in its natural condition, or is made so "by dams or other artificial means."