FRED S. KIELDSEN v. MATTHEW WILSON.

*Log lien—Judgment—Evidence.*

1. The log-lien law (Act No. 229) of 1887 does not apply to the case of a contractor for hauling saw-logs who performs no *personal* labor under the contract.

2. Where a contractor takes proceedings under the log-lien law of 1887 against the log-owner, with whom he claims to have made a contract for their hauling, and recovers a verdict for the amount claimed to be due on said contract, the fact that his non-performance of the labor in person deprives him of a lien under said statute will not affect said verdict; and if the verdict and judgment are in the usual form in *assumpsit*, and are silent as to such lien, it will be presumed that the jury failed to find a lien, especially where the record shows that their attention was called to the fact that if a lien was found it should be entered as a part of their verdict.

3. Evidence of the existence of a custom as to what part of a scaler's charges should be paid by a contractor with the owner for hauling saw-logs is admissible, as also proof of what the custom is, the contract being silent upon the subject.

Error to Missaukee.  (Aldrich, J.)  Argued July 10, 1889.  Decided October 18, 1889.

Proceedings under log-lien law of 1887.  Defendant brings error.  Affirmed.  The facts are stated in the opinion.

*E. Eugene Haskins* and *M. Brown,* for appellant.

*Silas S. Fallas,* for plaintiff.

SHERWOOD, C. J.  This suit is brought by the plaintiff against defendant to establish and enforce his lien against a quantity of pine and hemlock logs under Act No. 229, Laws of 1887.  On April 11, 1888, plaintiff filed his statement of lien, and on April 14 commenced his suit by writ of

attachment to enforce the same. The declaration, which is in the usual form in such cases, was duly filed after personal service of the writ, and defendant appeared and pleaded issuably in the case. The cause was tried before Judge Aldrich, in the Missaukee circuit, with a jury, and the plaintiff obtained judgment for the sum of $359.52, and defendant brings error. The record is large, and contains all the evidence in the case. Fifty-four errors are assigned upon the record.

The plaintiff's claim is that on January 20, 1888, he made a contract with defendant to haul certain logs on what was known as the "Kenneth Campbell Job," for $2.50 per thousand for pine, and $2 per thousand for hemlock; that at this time Campbell had hauled a considerable amount of logs, and defendant agreed to pay plaintiff for hauling those logs if plaintiff would pay Campbell's men who had done the work what was then due them; that it is conceded that plaintiff paid the men, and that defendant paid plaintiff for such hauling done by Campbell.

Plaintiff also claims that a subsequent agreement was made by which defendant was also to pay him for hauling what were known as the "Deucy Trespass Logs" at the rate of $4.50 per thousand feet.

Plaintiff further claims, as is conceded, that there were 1,241,143 feet of pine logs, and 247,215 feet of the hemlock, and he further claims there were 31,114 feet of the Deucy trespass logs; that the hauling of the pine and hemlock logs amounts to $3,597.29; and he concedes that he has been paid $3,300, leaving a balance due plaintiff of $297.29, and a sum amounting to $62.23 owing for hauling the Deucy logs, making the entire sum due plaintiff $359.52 on account of the above-mentioned logs; that the question of lien in the case is of but little consequence, defendant being not only the debtor but owner

of the logs; that it is not material whether the plaintiff should have a lien for the logs put in or not that have been paid for, the jury having found for plaintiff upon his theory of the case that he was to pay the men who worked for Campbell in hauling logs, and defendant was to pay him for the logs so hauled.

It is further claimed by plaintiff that the jury, in finding a verdict for the plaintiff, sustained his theory upon all the material points, and the main questions are therefore closed by the finding. Plaintiff further contends that not all the timber he hauled was scaled and reported, and that the amount omitted entitled him to have from the defendant $181.50 more under his contract, which would make his total claim against defendant, at the time of bringing suit, $541.02.

The contention of the defendant is that a contract was entered into between defendant and Campbell prior to the alleged contract with plaintiff, and by which Campbell agreed to cut, skid, haul, and bank the timber in question at the agreed price of $3.50 for the hemlock, and $4.50 for the pine; that Campbell, during the summer and fall of 1887, cut and skidded all of said timber, and that the same was ready to be hauled and banked during the ensuing winter; that under said contract it was agreed that Campbell should have from the defendant $2 per thousand for the pine, and $1.50 per thousand for the hemlock, as fast as the timber was cut and ready to be hauled; that estimates of the amounts so cut and skidded were made at various times, and that payments were made to Campbell accordingly.

Defendant further denies that any contract was ever made by him or his agent with plaintiff to haul the timber, but that plaintiff became involved with Campbell by furnishing him supplies, and to save himself from loss induced Campbell, by false representations, to

deliver over the job as it then stood to him, said plaintiff; that no contract relations whatever ever existed between plaintiff and defendant other than those which existed by reason of the plaintiff becoming successor to Campbell in the contract between him and the defendant; that the defendant never revoked his contract with Campbell, or authorized the plaintiff to take possession of the work under the same.

Defendant further contends that the amount which was due for cutting, skidding, and hauling the timber referred to upon the completion of the contract was $6,450.39, and that defendant had paid to Campbell, or to his order, thereon, $6,700; that the scaler's bill for working upon the timber was $217.55, one-half of which was to be paid by Campbell, making the total amount paid to him upon the job $6,808.77, being an overpayment of $358.38, which defendant claims Campbell or the plaintiff should repay; that the Deucy timber belonged to defendant, and was reported by the scaler as put in under the contract with Campbell, and for the putting in of which defendant has already paid.

We have now stated the theories of the respective parties, and upon which said cause was tried.

The first point made by the defendant is that the statute under which this suit is brought is not applicable to the plaintiff's case; that it was not intended by the Legislature, in giving the extraordinary remedy provided in this statute, to include within its provisions the contractor for the work and labor necessary to manufacture forest products into the various articles mentioned in the statute, but only those who actually perform such work and labor; that that class of persons were those needing the remedy provided, and which the common law failed to furnish; that the contractor for the labor could at all times protect himself sufficiently under the common law,

and by resort to the statutory remedies in force at the time of the passage of the act in question.

An examination of the title as well as the body of the act of 1887 satisfies us beyond any doubt that the position of defendant's counsel is correct upon this point. The lien created by the act is a specific one, for a particular class of claims, which .are based upon the personal labor of claimant, and he can only avail himself of the benefits of the statute by making proof that he has performed personally some portion of the labor for which payment is claimed, and the record fails to show any of that kind of labor performed by the plaintiff.

The next question naturally arising upon the record is, what is the effect of such omission upon the case as presented? The plaintiff's counsel insists that the question is of no consequence in the case, and, if it was, it has been finally disposed of by this Court in *Shaw v. Bradley*, 59 Mich. 199 (26 N. W. Rep. 331).

Section 12 of the act relates to this subject, and says that—

"In all suits on attachments, prosecuted under the provisions of this act, the court, jury, or justice of the peace who shall try the same, or make an assessment of damages therein, or make an inquest therein, shall, in addition to finding the sum due the plaintiff, also find that the same is due for labor and services performed upon the products described in the declaration, and is a lien upon the same; and the court or justice of the peace, as the case may be, shall render judgment in accordance with such finding, and execution shall issue therefor; and such execution, in addition to the commands in ordinary executions, shall command that the said products, or so much thereof as shall be necessary for that purpose, be sold to satisfy such judgment, and all costs, charges, and disbursements: *Provided, however*, that if the court, jury, or justice of the peace shall find that the amount due the plaintiff is not a lien upon the property described in the declaration, the plaintiff shall not be nonsuited there-

77 MICH—4.

by, but shall be entitled to judgment as in other civil actions; but in such case said plaintiff shall not recover or tax any costs arising from the filing of the statement of lien, nor for officers' fees, or expenses arising from the service of said writ of attachment, or expenses incurred relative to the property seized," etc.

And it is provided that if the amount due is found to be a lien it shall be stated also in the verdict, and for what amount.     In this case the verdict and judgment are in the usual form in *assumpsit*, where the same is for the plaintiff, and are silent as to the lien, and in such case we think it should be presumed that the jury found no lien, and especially should it be so where their attention was called to the fact that if they found otherwise it should be entered as part of their verdict.

Under the section referred to, and the circumstances of this case, we can see no reason why the verdict should not be allowed to stand, unless it shall be found that error was committed on the trial in the rulings in receiving or rejecting testimony or in the charge by the court.

Defendant claims that the agreement relied upon for pay for hauling the Deucy trespass logs was in writing, and that the court submitted the construction of the claimed contract to the jury, when he should have charged that the written agreement was not a contract to pay for hauling them.     We think, however, that the letters relating to this subject were properly submitted, together with the other facts and circumstances in the case, to the jury, to show what the understanding really was between the parties, and for them to give such effect as they saw fit to the testimony.

We see no objection to the testimony given under the first assignment of error.     It related to the situation of the account, at the time plaintiff made his claimed contract with defendant, between Campbell and Wilson, and

a part of which plaintiff was to perform, and this was proper.

Assignments of error from and including 2 to 16 all relate to the contracts made by plaintiff with defendant for hauling the logs, including the Deucy logs, and to the alleged action taken by each party under and in pursuance of said contracts; and an examination of the record discloses no error in any of the testimony offered prejudicial to the rights of the defendant, and it is unnecessary to take further or more particular notice of these.

The seventeenth and eighteenth assignments relate to the testimony offered showing the probabilities of plaintiff's engaging to do the work for less compensation than he claimed under the contracts with defendant.

The nineteenth assignment covers an objection by defendant to Campbell's statement upon the stand, when examined, as to what amount Wilson owed him, and the amount due from Campbell to his men at the time plaintiff assumed Campbell's indebtedness to the men. We see no objection to this testimony. This subject had been under consideration from the beginning, more or less, and certainly was a competent fact, as bearing upon the contract as claimed by the plaintiff.

There is nothing objectionable in the rulings complained of in the next 17 assignments of error, and only those relating to the custom as to what part of the amount of the scaler's charges should be paid by the plaintiff, under such a contract as he insists he did the work charged, when the contract is silent upon the subject, as this was, require mention under the theory of either party. If such a custom existed, it was proper for either party to show it, as it would very clearly affect the amount of the recovery, if a recovery was had; and it was a subject upon which it would be reasonable to

suppose a custom might exist, and evidence to show it did .exist, and what it was, was properly admitted. Whether or not it was properly rebutting was a matter under the control of the trial judge, and we do not think, as the record presents the question, his discretion should be interfered with.

Counsel for defendant, at the close of the trial, presented eight requests to charge. The first was given by the court. In the second request counsel for the defendant asks the court to state to the jury the theory of plaintiff as given in the request. The request does not state properly and correctly that theory, and the court's ruling was correct in refusing to give it. The third request was substantially given. The fourth relates to the claimed lien of plaintiff, which, under the findings of the jury, is of no materiality; and the same is true of the fifth request. The sixth request asks the court to pass upon a portion of the facts which ought not to be considered except in connection with the rest of the testimony upon the same subject, and was therefore properly rejected. The seventh asks for a conclusion which cannot be reached without passing upon the facts, and the eighth request is subject to the same infirmity.

The remaining 18 assignments of error all relate to the charge as given by the court. A careful reading of the charge and the brief of defendant's counsel fails to convince us that any error was committed by the learned circuit judge, and the judgment must be affirmed.

The other Justices concurred.