O. C. MERRIMAN and others *vs.* W. T. BOWEN.

June 15, 1885.

Logs and Lumber—Compensation for Floating Intermingled Logs.—
    A claim by the plaintiff, under Gen. St. 1878, c. 32, § 78, for driving logs of another, hindering the passage of his own logs, is not affected by the fact that at the time the stream had not, in its natural state, sufficient water to float logs, and that to float them it was necessary to let into the stream water accumulated in artificial dams.

Plaintiffs brought this action in the district court for Hennepin county, to recover compensation for driving logs owned by defendant and which were intermingled with those of the plaintiffs. Defendant appeals from an order by *Young*, J., refusing a new trial, after a verdict for plaintiffs.

Among other defences the answer alleged that defendant furnished men to drive his own logs, that his men did more, proportionately, in driving the total mass of logs than did plaintiffs' men, and that it was understood and agreed between plaintiffs and defendant that no charge should be made by either party for any work done by either on the logs of the other. On the trial, one Buck-

man, a witness on behalf of defendant, testified to having had some charge of driving the defendant's logs ,and to having a conversation with one Dwyer who had charge of plaintiffs' drive. Defendant then asked the witness if he had any arrangement with Dwyer, which question was, on plaintiffs' objection, excluded.

*W. E. Hale*, for appellant.

*C. H. Benton*, for respondents.

GILFILLAN, C. J.   Gen. St. 1878, *c.* 32, § 1, enacts: "All rivers within this state of sufficient size for floating or driving logs, timber, or lumber, and which may be used for that purpose, are hereby declared to be public highways, so far as to prevent obstructions to the free passage of logs, timber, or lumber down said streams, or either of them."   Section 78 of the same chapter enacts "that any person who shall desire to float to market or place of manufacture any logs or timber in any of the streams of this state, and who shall be hindered and obstructed in so doing by the logs or timber of another, or any person whose logs or timber in any of the waters of this state are so intermixed with the timber or logs of another that the same cannot be conveniently separated for the purpose of being floated to the market or place of manufacture, may drive all logs or timber with which his own is or may be obstructed or intermixed, towards such market or place of manufacture, to some point where the same can be conveniently separated from his own, and shall be entitled to a reasonable compensation therefor from the owner of such logs or timber."

The action is brought to recover compensation claimed to have been earned by driving defendant's logs, intermingled with plaintiffs'; the streams on which they were so driven being the Big Hillman, the Skunk, the Platt, and the Mississippi.   The right to recover for the driving on the Big Hillman and Skunk is denied.   These are natural streams, water flowing in them at all seasons; in very wet seasons enough to float logs, but in dry seasons not enough.   To supply sufficient water, dams have been constructed to hold back and accumulate the water until it shall be needed for the floating of logs, when the dams are opened, and with the water thus furnished the logs are floated down those streams to deeper water.   In the season when the logs involved

were driven, (1883,) the water was low, and the plaintiffs, who appear to have had or to have assumed charge of the dams, let out the water, and solely by means thereof were enabled to and did float their own and the defendant's logs, then lying apparently stranded, in the streams.

The defendant insists that the statute provisions we have cited were not intended to apply to streams which in their *natural* condition cannot be used for transporting logs; that the term "float," as used, means actual floating,—that which exists in the *natural* state of a stream, unassisted by artificial means, such as dams, sluices, etc.; and that a stream is within the statute at such times as, in its natural state, and without such means, it will float logs, and at no other times.

The business of cutting and, by means of the streams, floating logs to market or a place of manufacture, is, and from the earliest days of Minnesota as a territory has been, a large and important business,—one of the greatest of our industries. Its importance, and the imperative necessity of regulating it, and the use of the streams in conducting it, is attested by the fact that chapter 32, one of the longest in the statutes, is devoted exclusively to those subjects. The provisions of that chapter are in aid of business and commerce, and should be liberally construed to carry out their general purpose. If the construction contended for be the true one, then there are very few streams in the state to which the sections from which we have quoted can apply, for there are very few that can be efficiently used for floating logs in their natural state and without any artificial aids, and the usefulness of those provisions will be comparatively limited.

It would seem unreasonable that a stream should forever be excluded from the operation of these sections because, in its natural state, by reason of shoals, rapids, falls, sharp curves, or other natural impediments, it requires such contrivances as are commonly resorted to in such cases to make it fully available for floating logs. But the proposition of defendant leads logically to this: that, however free from natural obstructions and available for floating logs to market a stream may be to-day, if it can only be shown that originally there were natural impediments, which have since been artificially removed, that prevented such use of it, then any owner of logs may throw them

into the stream, and, if they are in the way of logs above him, the owner of the latter must either stop his own drive, or gratuitously take along those thus obstructing him. Such, certainly, could not have been the intention of the statute. The legislature must be presumed to have legislated with knowledge of the subject; of the nature and necessities of the business; of the manner in which it is usually done; of the character of the streams; of the fact that their natural capacity is commonly, and often must necessarily be, aided by various contrivances, such as different kinds of dams, booms, sluices, etc., in order to make them perform all that the necessities of the business and of the country require of them. And it must be presumed that the streams intended by sections 1 and 78, above quoted, are such as, with such contrivances, and by the use of the means ordinarily employed, are capable of floating logs.

It is therefore no objection to plaintiffs' claim that the streams mentioned were at the time made capable of floating the logs, by letting into them an amount of water greater than at the time would have been there naturally and without artificial means.

The questions put to the witness Buckman as to conversations with plaintiffs' foreman, Dwyer, were incompetent; for, while it appears clearly enough that he had full authority from plaintiffs to have charge of their drive, there is no evidence of any authority in him to make contracts for them with the owners of other logs.

Order affirmed.