HENRY B. BEARD and another *vs.* NEHEMIAH P. CLARKE.

June 28, 1886.

**Logs and Logging — Compensation for Driving Intermingled Logs.**
Plaintiffs and defendant made a contract for a joint drive of their intermingled logs in Platte river from S. to the Mississippi river.   Pursuant to such contract they engaged in a joint drive, and drove the logs from S. to T., where defendant abandoned the drive, and refused further to aid it.   Plaintiffs then drove the intermingled logs from T. to R., the first point at which they could be conveniently separated.   *Held,* (1.) That

the logs having been driven from S. to T. as a joint drive, under this contract, if defendant failed to furnish his full quota of men, plaintiffs' remedy would be on the contract and not under the statute. Gen. St. c. 32, § 78. (2.) But, defendant having abandoned the drive at T., plaintiffs might elect to consider the contract for a joint drive as at an end, and then proceed to drive the intermingled logs, under the statute, to the first point at which they could be conveniently separated. It would be immaterial whether they personally made the drive with their own men, or hired another as a contractor to perform it.

**Same—Right to Recover under Statute.**—A person may recover, under the statute, for driving the logs of another hindering the passage of his own, although at the time the stream would not be navigable for logs in its natural stage, and without the aid of artificial dams and reservoirs; following *Merriman* v. *Bowen*, 33 Minn. 455, (23 N. W. Rep. 843.)

**Same—Skill and Care required of Driver.**—A person who assumes to drive the logs of another, under the statute, is bound to exercise good faith, ordinary care, and reasonable skill and judgment in selecting the time and manner of making the drive.

Evidence considered, and *held* sufficient to sustain the finding.

Cross appeals from an order of the district court for Stearns county, denying plaintiffs' and defendant's motions for a new trial, after a trial before *Collins*, J., a jury having been waived.

*P. M. Babcock* and *J. R. Bennett,* Jr., for plaintiffs.

*D. B. & F. E. Searle,* for respondent.

MITCHELL, J. In the spring of 1884, the plaintiffs and defendant had a large quantity of logs in the Platte river, a tributary of the Mississippi, between Sullivan lake and Gravel's dam. They were so intermingled that they could not be conveniently separated for the purpose of being floated to the place of market or manufacture. In addition to these, defendant had other logs in the same stream below Gravel's dam. The court finds that the parties made a contract for a joint drive from Sullivan lake to the Mississippi. There is no conflict of evidence on this point. Both parties testify to the fact, the only point of difference between them being as to whether this contract included defendant's logs below Gravel's dam,—a question which, as will be hereafter seen, is wholly immaterial in this case.

The court also finds, in substance, that, in pursuance of this con-

tract, the parties engaged in and prosecuted a joint drive until the drive reached Tribby's camp, a place below Gravel's dam. There is no real conflict of evidence on this point, the only dispute being as to whether defendant furnished his full quota of men. But that he had some men (from 18 to 40) on the drive with plaintiffs' men is not controverted. It might be here remarked that while the men of both parties were thus engaged jointly in driving their intermingled logs above Gravel's dam, defendant had men at work driving his logs below that point, and finally drove them to market independently of those in the rear. Hence they cut no figure in the present case.

The court further finds that, when this joint drive reached Tribby's camp, defendant abandoned it, and refused to aid in it further. Neither is there any conflict of evidence as to this fact. The only controversy is whether defendant was justified in abandoning the drive on account of the low stage of water.

After defendant thus abandoned the drive, plaintiffs, being desirous of getting their logs to market, proceeded, and made a clean drive of the intermingled logs of themselves and defendant from Tribby's camp down to Rice lake, the first point at which all of the logs could have been conveniently separated. It is also found that, in order to make this drive, plaintiffs accumulated the waters of the river by artificial dams, and then, by releasing these waters, floated or drove the logs; the use of such artificial aid being necessary because of the low stage of water in the stream in its natural condition. It appears from the evidence that one of the dams was one which had been built some years before, but had gone out, and was rebuilt by plaintiffs to aid in making this drive. It should also be here stated that the plaintiffs hired other parties, for a gross sum, to make the latter part of this drive, viz., from Gravelville to Rice lake, instead of making it themselves.

Plaintiffs brought this action to recover compensation under Gen. St. 1878, c. 32, § 78, for driving defendant's logs from *Sullivan lake* to Rice lake. The court allowed them for driving from Tribby's camp, (where defendant abandoned the drive,) but allowed nothing for driving from Sullivan lake to Tribby's camp. Both parties appealed.

There are two reasons why plaintiffs could recover nothing in this action for driving from Sullivan lake to Tribby's camp: *first,* the cause of action declared on is not upon contract, but upon the statute. But the logs were driven as far as Tribby's, not under the provisions of the statute, but under an express contract of the parties for a joint drive; and if plaintiffs have any cause of action against defendant on account of that drive, it is for a breach of that contract in not furnishing his proper quota of men. But, *second,* even if the complaint covered such a cause of action, the evidence furnished no basis for ascertaining the amount plaintiffs were entitled to recover.

Plaintiffs proceeded upon the theory that because defendant did not furnish his full quota of men, therefore they were entitled to recover the full value of making the whole drive, allowing defendant nothing for what he did do. Hence, plaintiffs' evidence had reference entirely to the value of driving logs from Sullivan lake to Rice lake, and but for evidence introduced by defendant there would have been nothing from which they could have found the value of driving from Tribby's camp down. This disposes of plaintiffs' appeal.

2. Defendant, in support of his appeal, contends that, there having been an express contract for a joint drive to the Mississippi, plaintiffs' cause of action, if they had one, would be on this contract, to recover damages for its breach; that where parties have made an express contract, none can be implied; and hence that plaintiffs cannot recover under the statute, or on what defendant calls an implied contract springing from the statute. The legal principle invoked is correct, but we think it has no application to the facts of this case. So long as the agreement for a joint drive was being acted on and recognized by the parties as in force, its terms, and not the provisions of the statute, would govern their rights and duties. This was the case in the present instance until the drive reached Tribby's camp, where defendant abandoned it, and refused to further aid in it. Whether plaintiffs might have insisted on treating the contract as still in force, and gone on and driven the logs to the Mississippi, and then sued defendant for damages for breach of the contract, we need not inquire. If defendant broke the contract by abandoning the drive, plaintiffs might treat the contract as terminated, and further

performance of it as at an end, and then fall back upon their rights under the statute, and drive the intermingled logs merely to the first point at which they could be separated. *Walker* v. *Bean*, 34 Minn. 427, (26 N. W. Rep. 232.)

The next contention of defendant is that at the time plaintiffs made this drive, the stage of water was so low as to render it impracticable to drive logs, except at an unreasonable and unnecessary expense; that in selecting a time for making this drive plaintiffs exercised neither ordinary care, sound discretion, nor prudent management. A person who assumes the right, under the statute, to drive the logs of another intermingled with his own, is undoubtedly bound, in selecting the time for driving, and in all other particulars in which the rights of such other person are involved, to exercise good faith, ordinary care, and prudent management. Having elected to drive the logs, he is subject to such care and skill as legally attaches to the position of bailee and agent. He must exercise, not only good faith, but also reasonable skill and judgment. *Foster* v. *Cushing*, 35 Me. 60; *Weymouth* v. *Penobscot Log Driving Co.*, 71 Me. 29, 39.

The court finds that during the time plaintiffs were engaged in driving these logs, the waters of the Platte were then in such condition and stage as to warrant a prudent man, in the exercise of good judgment and sound discretion, in floating and driving these logs. Judging from the results at the close of the season, it might seem as if this was an ill-advised drive, and, had plaintiffs seen the end from the beginning, perhaps they might not have been justified in making the drive. But this, of course, is no proper test. Things must be taken as they existed or appeared at the time plaintiffs were called on to act in the matter; and while the evidence is conflicting as to the propriety or expediency of continuing the drive after June 20th, yet we are of opinion that there is evidence reasonably tending to support the finding of the court.

The position that it is only when a stream has a floating capacity in its natural condition, and without the aid of artificial dams and reservoirs, that the statute applies, or gives a party a right to recover for driving the logs of another, is fully disposed of by the case of *Merriman* v. *Bowen*, 33 Minn. 455, (23 N. W. Rep. 843.) If anything

were required to enforce and illustrate the correctness of the doctrine of that decision, it can be found in the facts of the present case. The Platte has been for nearly a quarter of a century an important logging stream, down which millions of feet have been driven every year. The use of water accumulated in reservoirs by means of artificial dams is and has been the ordinary way of driving logs in this stream for the last 20 years. It rarely, if ever, occurs that the water, at its natural stage, continues high enough throughout the season so as to complete a drive without resort to these artificial aids. This is so with most of the logging streams in this and adjoining states. We doubt whether there is now on the waters of the upper Mississippi, the St. Croix, or Chippewa a logging stream on which these dams have not been constructed. This is now a commonly adopted mode of improving the navigability of such streams. In fact, it has been adopted by the general government as a mode of improving the navigation of the Mississippi itself. The capability of a stream to be thus improved is a part of its navigable capacity. To hold that a stream is not a public highway except when navigable in its natural or unimproved condition, or that the statute has no application when the stream could not be used except for improvements to its navigability, would seem to us a very narrow and unreasonable doctrine.

Defendant attempts to distinguish the case from *Merriman* v. *Bowen, supra,* in that one of the dams (the Morrison dam) was constructed by plaintiffs to aid in making this drive. If a party has a right, under the statute, to drive by using these artificial aids, it seems to us it is wholly immaterial when or by whom the improvements were made.

The fact that plaintiffs, instead of completing the drive with men hired by the day or month, employed another as contractor to finish it for a gross sum, is wholly immaterial.

The result is that in each appeal the order denying a new trial is affirmed.