WILLIAM MILLER and another *vs.* JESSE B. CHATTERTON.

June 15, 1891.

**Statutory Action for Driving Logs of Another.**—One who would avail himself of the benefit of the statute allowing persons to drive the logs of others at the expense of the latter, under specified circumstances, must actually *drive* such logs. It is not enough for him to merely get them out of his own way, without further effort to keep them afloat in the stream.

**Same—Common-Law Action for Obstructing Stream by Logs.**—This statute does not take away the common-law right of action for injuries resulting from wrongfully causing, or neglecting to remove, an obstruction in the stream, as by logs negligently allowed to become or to remain jammed therein.

**Same—Grounds of Liability.**—To sustain a recovery for such a cause, on a trial by the court, the findings must show that the defendant's conduct in temporarily "abandoning" his logs in a jam was negligent or otherwise wrongful.

Appeal by plaintiffs from an order of the district court for Hennepin county refusing a new trial after a trial before *Hicks*, J., and judgment of $1 ordered in their favor. The action was brought to recover $4,030, and to have $1,500 thereof adjudged a lien on certain logs of the defendant.

*Selden Bacon*, for appellants.

*D. A. Secombe*, for respondent.

DICKINSON, J.   The Hill river empties into the Willow river, and the latter into the Mississippi.   All these streams are public highways for the floating of logs.   Prior to May, 1889, the plaintiffs had in the Hill and Willow rivers about 13,000,000 feet of pine logs, to be floated down to Brainerd, on the Mississippi river.   The defendant had in the Willow river, below the logs of the plaintiffs, about 60,000 cedar logs, intended also to be floated down the Willow and Mississippi rivers.   At a proper stage of the water both parties entered upon the work of driving their logs, and provided sufficient men for that purpose.   The plaintiffs drove their logs in detachments, and with all possible speed.   From this fact, and because the logs of the defendant were more difficult to drive and more likely to become jammed, owing to their greater length and smaller size, the logs of the plaintiffs overtook and became intermingled with those of the defendant in the Willow river, and in the Mississippi river they all became intermingled with other logs coming down the latter stream.   The driving of the logs by both parties was continued as far as Aitkin, on the Mississippi river, near which place a jam of logs was formed, preventing their further passage down the river. The plaintiffs, being in haste to get their logs through, furnished sufficient men to break the jam, and, having done so, went on with their logs, the defendant having practically abandoned his drive until after the plaintiffs had broken the jam and driven their logs onward.   In thus breaking the jam, and in getting their own logs through, the plaintiffs were necessarily obliged to, and did, drive many of those of the defendant from Aitkin to Brainerd, a distance of 50 miles.   They did not, however, attempt to drive all the defendant's logs, but only such as they were obliged to move in forcing a passage for their own. The court further found that the defendant, by so temporarily abandoning his drive at Aitkin, obstructed the free navigation of the river, and impeded the plaintiffs' logs, and thereby caused plaintiffs to expend time and money to clear the river from the obstructions thereby formed; but it was considered that the amount of such expenditure was not sufficiently shown to enable the court to determine the same, and damages in the amount of only one dollar were awarded to the

plaintiffs. The plaintiffs appealed from an order refusing a new trial. There was no application to the trial court for additional findings of fact.

1. The statute (Gen. St. 1878, c. 32, § 78,) allowing one who in the driving of his logs shall be hindered and obstructed by those of another, or where his logs become inseparably intermingled with those of another, to drive the obstructing or intermingled logs, and to re-   ' cover compensation therefor, is in derogation of common-law principles, and should be strictly construed. We do not venture to say that there may not be such circumstances that one may take up and carry along a part of the logs constituting the "drive" of another, without attempting to take the whole. For instance, it probably would not be necessary that one who undertakes to drive the logs of another, with which his own had become inseparably mingled, should go back above the point where the intermingling occurs, and set afloat logs of the other party which had previously become separated from the mass and lodged on the shores. But here we understand that the intermingled logs were together in a mass; and while it was necessary for the plaintiffs to get out of the way or to drive a considerable quantity of the defendant's logs in order to get their own down the stream, there were no peculiar reasons why they should not carry forward the defendant's whole drive, if they assumed to take any of them, under the statute. The distinction between simply getting the obstructing logs out of the way of those of the plaintiffs, and a driving of them as contemplated by the statute, is important. The statute, in the cases specified, authorizes one to "drive" all logs by which his own may be obstructed, or with which they are intermingled. The term here used has a well-understood meaning, and involves the exercise of the requisite care and effort to take the logs down the stream, and the assuming of responsibility in the discharge of a duty towards the owners of the logs. The plaintiffs did not undertake such duty and responsibility, or regulate their conduct with any reference to the interests of or benefit to the owner of the obstructing logs. What they did was simply to get them out of their own way. The fact that they did this, and that the stream carried down a considerable proportion of them, others being left to lodge on

the shores or elsewhere as they might chance to do, does not make a case entitling the plaintiffs to a recovery, under the statute. *Beard* v. *Clarke,* 35 Minn. 324, 328, (29 N. W. Rep. 142.) The court was right in its decision upon this feature of the case.

2. The statute has not the effect to take away the common-law liability for a wrongful obstruction of the plaintiffs in the driving of their logs down the stream. The statute was not intended to supersede the remedy which the common law afforded for a wrong. It is not directed particularly to wrongful obstructions. It comprehends also cases in which no wrong could be ascribed to the owner of the obstructing or intermingled logs. The remedy or right given by the statute is peculiar, in that it is attended by, or conditioned upon, the assuming of a care and responsibility respecting the obstructing logs, which the person injured by the obstruction might often be unable or unwilling to assume. There is nothing in the substance or form of the statute to indicate an intention that this remedy or right, available only upon peculiar conditions, should exclude the common-law remedies for wrongs. *Caswell* v. *Worth,* 5 El. & Bl. 849; *Colden* v. *Eldred,* 15 John. 220; *Coffin* v. *Field,* 7 Cush. 355, 358; End. Interp. St. § 218.

3. But the plaintiffs' right to recover, independent of the statute, depends upon the defendant's conduct having been negligent or otherwise wrongful. The latter had the right to use this highway for the driving of his logs to their destination, regulating his conduct with regard to the right of others to use it in a like manner. The mere fact that in such use the logs of the defendant, with those of the plaintiffs and of other persons, became jammed in a mass, so as to completely obstruct the stream, does not charge him with liability. Doubtless it did then become his duty, in connection with the other owners of the logs forming the jam, to adopt such means and make such effort as might be necessary to remove the obstruction. What should be done, and how quickly, might depend upon the circumstances of the particular case. Some delay might be reasonable or even necessary. For instance, if another jam had formed further down the stream, it might be expedient or necessary that it should be first broken, and the logs set afloat, before the upper jam

should be disturbed and the logs in it let down upon that below.  We need not, however, speculate as to the many conditions which might exist, and which would justify or even render necessary some delay in the effort to remove such an obstruction.   It is enough to say that the mere fact of delay is not necessarily negligence or otherwise wrongful, and cannot be pronounced to be so, as a matter of law. Now, as the judgment in this case must rest and can be sustained, if at all, only upon the facts found, it is essential that the findings show more than the mere fact of delay on the part of the defendant in making effort to break the jam at Aitkin.   If it is not found that the defendant's conduct in the premises is wrongful, unreasonable, a breach of duty, a judgment awarding a recovery against him would be unsustainable. ˙ Although the evidence may have been abundantly sufficient to justify such a finding, it is not the province of an appellate court to make an original determination of the facts in issue, nor can a judgment rest merely upon the evidence, without a verdict or finding of facts legally justifying it.   For the reason that it is not found by the court that the defendant's conduct was negligent or otherwise wrongful, a judgment awarding a recovery against him could not have been sustained.   The plaintiffs are therefore not prejudiced by the fact that the recovery allowed in their favor was only for a nominal sum.   The finding that the defendant temporarily "abandoned" the drive at Aitkin cannot safely or fairly be construed as meaning that he did so unreasonably, negligently, or wrongfully.

It is unnecessary to consider whether the evidence as to the amount of the plaintiffs' damages was sufficiently definite to have enabled the court to assess the amount thereof.

Order affirmed.

NOTE. A motion for a reargument of this case was denied June 30, 1891.