CRANE LUMBER CO. *v.* BELLOWS.

1. LOGS AND LOGGING—LIENS—BREAKING JAM—CONSTITUTIONAL
   LAW.

   3 How. Stat. § 2035, giving to those who float logs in a stream,
   whether naturally navigable or made so by dams or other ar-
   tificial means, a lien upon obstructing logs of other owners to
   the extent of a reasonable compensation for their services in
   breaking the jam to permit of the passage of their own logs,
   is not unconstitutional as taking property without due process
   of law.

2. SAME—USE OF DAM—COMPENSATION.

   The proprietor of a dam by means of which logs are floated
   down a stream in times of shallow water is not entitled to
   compensation for the use of the dam from an owner whose
   logs were floated down the stream with his own, by means of
   the dam, where such owner did not request that his logs be
   moved, but they were moved to enable the proprietor of the
   dam to float his own logs.

Error to Benzie; Aldrich, J.   Submitted June 7, 1898.
Decided July 12, 1898.

*Assumpsit* by the Crane Lumber Company against
Elwin Bellows and Adelbert Bellows, under 3 How. Stat.
§ 2035, to recover for labor in breaking a jam of logs
belonging to defendants.   From a judgment for plaintiff,
defendants bring error.   Reversed.

*George Whitbeck* and *Smurthwaite & Fowler*, for
appellants.

*D. G. F. Warner* and *Pratt & Davis*, for appellee.

HOOKER, J.   The parties to this cause are mill owners,
their respective mills being situate upon Betsey Lake,
which is the outlet to Betsey river, and both parties are
dependent upon this river as a means of floating logs.

There are two dams upon this river, which are used for the storage of water, whereby the stream may be raised, thereby aiding the moving of logs over shallows, or in time of low water. One of these dams, viz., the one located at Crystal Lake, belongs to the plaintiff; the other was leased to one Hart, who assigned his lease to the plaintiff. In the spring of 1896 both plaintiff and defendants contracted with Hart to run their respective logs down the river. His contract with the plaintiff required him to deliver its logs with rear below "Judson's bridge," while those of the defendants were to be delivered "in solid jam from Frankfort up to wherever the jam may extend." In order to perform his contract with the plaintiff, it became necessary for Hart to bring the whole drive down to Judson's bridge, which could not be done until, by assorting at the lake, some of the logs were removed to the mills of their respective owners, thereby making room for the jam with rear below Judson's bridge. By the time this was done, the river was low, and the labor of moving the logs was greater than at other seasons. The defendants were in no hurry for their logs, but, as the logs were intermingled, Hart could not obtain payment from the plaintiff until the rear of the drive was below Judson's bridge. He therefore employed men, and by the use of the dams brought it down. He then assigned his claim to the plaintiff, who began this action upon the claim, and for compensation for the use of the dams. The circuit judge permitted an amendment of the declaration, which, as originally filed, contained no averment of the assignment, and the plaintiff was allowed to recover under the statute (3 How. Stat. § 2035) for labor in driving the defendants' logs, and upon the common counts for the use of the dams, and for labor in their management during the time spent in bringing down the rear of the drive. Section 2035, 3 How. Stat., requires those who float logs in navigable streams to avoid obstructing them, and, when they do so through failure to properly drive their logs or break jams, others who find it neces-

sary to put labor upon the obstructing logs are given the right to reasonable compensation.

Counsel raise many questions, and we can refer to the most important only. It is asserted that the law is unconstitutional. Our attention is called to the cases of *Kroll* v. *Nester*, 52 Mich. 70, and *Shaw* v. *Bradley*, 59 Mich. 209, in support of this contention; but these cases go no further than to hold that the statute then existing had no application to a stream which requires the aid of artificial means in running logs. But the year following the later decision the law was so amended as to ·include such streams. In the State of Minnesota a similar statute was more liberally construed, and held to permit recovery when flooding by means of dams was resorted to to make the stream navigable for logs, although the act did not in terms include such streams. *Merriman* v. *Bowen*, 33 Minn. 455; *Beard* v. *Clarke*, 35 Minn. 324.

It is urged that the effect of our statute is to subject the owner of logs who is willing to have them floated at the seasons of natural floods to a more expensive method, at the will of another. The law seems to recognize the advantages of artificial flooding in streams, and there would, perhaps, be as great injustice in permitting the defendants to obstruct the river to the disadvantage of the log owner whose needs require the artificial flooding as to require the former to pay the expense of removing such obstructions. The law does not allow the plaintiff to set his own price on the labor and services rendered in moving the logs of others, but merely permits a recovery of reasonable compensation. If, as contended, the defendants have a legal right to run logs, it does not follow that they have a right to obstruct others unless they shall wait for the season which they may consider the best for the economical moving of logs. While we do not mean to be understood that they may be subjected to unnecessary expense by reason of moving at an unsuitable time, we are of the opinion that the legislature may lawfully protect those who wish to avail themselves of artificial

flooding to the extent of requiring others to move obstructing logs at all reasonable times, whether the floods are natural or artificial.

Counsel maintain that, but for the large quantity of logs of the plaintiff, the defendants' logs could have come down with the drive, and not been left above; and suggest that, had the plaintiff kept back its own logs which came out of Crystal Lake, defendants' logs would not have required this service, but would have been brought down further by Hart under his contract. We cannot say that the plaintiff had not the right to take its logs from Crystal Lake when it chose, or that it was under obligation to subject itself to loss and disadvantage for the defendants' benefit. If the defendants' logs obstructed the stream, and prevented the plaintiff or Hart from getting its logs down, the drive might be brought down at any proper time, by either party, at reasonable and proportionate cost to all having logs in the drive, unless they saw fit to do a proportionate share of the labor. This is substantially the view of the learned circuit judge who tried the cause.

Usually the dams and other facilities for artificial flooding are the property of individuals who control the right to use them, and while, under reasonable limitations, their right and ability to run logs by the aid of these must be recognized, and obstructing proprietors made to pay the reasonable cost of removing their respective obstructions, such persons are not required to contribute to the erection, maintenance, or operation of such dams and other apparatus intended to create artificial floods, but only to the labor and expense attendant upon the drive made necessary by their obstructions. In this case, if it was reasonably practicable to move the logs in the stream, though only by means of the use of the dams, the plaintiff, or its assignor, Hart, might bring along the whole drive, so far as necessary to the extrication of its own property; but its right to contribution did not include the charge for the use of, or labor at, the dams which it erected and used for

its own purposes. The use of the dam is not a public right, but is entirely within the control of the owner. He can use it when he chooses, but he cannot require others to pay for its use, when they do not request it. His right to recover from them is limited to the expense put upon the removal of obstructions. Apparently there was no claim to compensation for the use of the dams under the statute, but the plaintiff was allowed to recover under the common counts, the judge instructing the jury as follows in relation thereto:

"In this case the plaintiff, in its declaration, also makes certain claims besides these upon which it claims a lien upon the logs. It makes certain claims for the use of two dams,—one dam near the head of this river, and another between this river and Crystal Lake. Now, as to those matters, those are questions which are put in the case here under the common counts in *assumpsit* which were put in the plaintiff's declaration. Now, as to those questions, if you believe from the evidence the plaintiff had control and the right to the use of these dams, and used them to its own advantage, and to the advantage of the defendants in the case, you have a right to allow as a part of your verdict in the case in favor of the plaintiff, in case you should find such a one, such an amount as you find from the evidence would reasonably compensate the plaintiff for the use and value of these two dams which it claims to have used for the advantage of the defendants and itself; that is, such an amount as you find the proper share of the defendants would be for the use and value of the dams."

The undisputed evidence shows that the defendants made no request that their logs should be moved. On the contrary, they protested against it. There was, therefore, no opportunity for the inference of a promise.

The judgment is reversed, and a new trial ordered.

The other Justices concurred.